ROBERT L. ESENSTEN, ESQ. (CA Bar No. 65728), *pro hac vice*
   resensten@esenstenlaw.com
RANDI R. GEFFNER (CA Bar No. 116574), *pro hac vice*
   rgeffner@esenstenlaw.com
**ESENSTEN LAW**
12100 Wilshire Boulevard, Suite 1660
Los Angeles, California 90025
Telephone:  (310) 273-3090
Facsimile:   (310) 207-5969

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXA BATES, EMINA ABDAGIC, GABRIELLA AGUILERA, YAZMIN ALI, TERRA ANGLIN, ASHLEY ARACENA, ROBYN ARLAN, LA CANADA ASUNCION, LISA ATLAS, TRACI BATES, HELENE BEGUN, GEORGEANN BENEDICT, SHENISHA BOOTH, ELIZABETH BRUSS, LUCY ANN BURKE, CHRISTINA CALA, YENNIFER CAMPOS, LAURA CHAVEZ-MORENO, SUSAN CHEYNE, MOLLY CLARK, CHLOE CORNELL, KIMBERLY COUTURE, DEAN DAMON, ESTHER EPSTEIN, MARIANA GOES, KIM GRAHAM, ROSEANNA GREGA, WENDY GREGORY, DIANA HASROUNI, NATASHA HOBSON, DONNA HUGHES, GIANNA IMBRONONE, NATALIE KIKKENBORG, RHONDA KOEHLER, KRISTINA LANE, JEANNE LASHMETT, JULIA LEHNEN, VICKIE LEWIS, JENNIFER LONGBINE, FELICIA MONTANO, NARAYANA MONTUFAR, MARIA GUADALUPE MORA, NICOLE MUSCARELLA, GIGI OLIVER, ELIANA PALMA, KRISTEN PEDLEY, CHRISTINA PIERRE, MICHELLE PHARES, LAUREN RACUSIN, SARAH RASHID, EMMANUEL REGISTER, MARITZA RIVERA, CARMEN ROSA, GINA RYAN, ANNYOCELI SANTIAGO, KAALAN SCHAEFFER, JULIANA | **CASE NO.: 1:20-cv-09056-GHW**<br><br>**SECOND AMENDED COMPLAINT:**<br><br>  1.  **Negligence/Gross Negligence**<br>  2.  **Strict Liability/Design Defect**<br>  3.  **Strict Liability/Failure to Warn**<br>  4.  **Negligent Products Liability**<br>  5.  **Breach of Implied Warranty**<br>  6.  **Breach of Express Warranty**<br>  7.  **Consumer Protection Claims**<br><br><br>**DEMAND FOR JURY TRIAL** |

STANSFIELD, CANDACE STIMSON,
MARYAM TEHRANIE, SUZANNE
TILLOTSON, MEGAN TRAMA,
JEANETTE TRAVIS, STELLA WARDA,
SHIRLEY WEISS, JENNIFER
WHITCOMB, JILLIE WILLIAMS,
AMANDA WILSON,

      Plaintiffs,

  vs.

DEVA CONCEPTS, LLC, a Delaware
Limited Liability Company doing business
as Deva Curl (Doing Business In New
York),

      Defendants.

Plaintiffs ALEXA BATES, EMINA ABDAGIC, GABRIELLA AGUILERA, YAZMIN ALI, ASHLEY ARACENA,  ROBYN ARLAN, LA CANADA ASUNCION, LISA ATLAS, TRACI BATES, HELENE BEGUN, GEORGEANN BENEDICT, SHENISHIA BOOTH, ELIZABETH BRUSS, LUCY ANN BURKE, CHRISTINA CALA, YENNIFER CAMPOS, LAURA CHAVEZ-MORENO, SUSAN CHEYNE, MOLLY CLARK, CHLOE CORNELL, KIMBERLY COUTURE, DEAN DAMON, ESTHER EPSTEIN, MARIANA GOES, KIM GRAHAM, ROSEANNA GREGA, WENDY GREGORY, DIANA HASROUNI, DONNA HUGHES, GIANNA IMBRONONE, NATALIE KIKKENBORG, RHONDA KOEHLER, KRISTINA LANE, JEANNE LASHMETT, JULIA LEHNEN, VICKIE LEWIS, JENNIFER LONGBINE, FELICIA MONTANO, MARIA GUADALUPE MORA, NICOLE MUSCARELLA, GIGI OLIVER, ELIANA PALMA, KRISTEN PEDLEY, CHRISTINA PIERRE, MICHELLE PHARES, LAUREN RACUSIN, SARAH RASHID, EMMANUEL REGISTER, MARITZA RIVERA, CARMEN ROSA, GINA RYAN, ANNYOCELI SANTIAGO,   KAALAN SCHAEFFER, JULIANA STANSFIELD, CANDACE STIMSON, MARYAM TEHRANIE, SUZANNE TILLOTSON, MEGAN TRAMA,

JEANETTE TRAVIS, STELLA WARDA, SHIRLEY WEISS, JENNIFER WHITCOMB, JILLIE WILLIAMS, and AMANDA WILSON (collectively "Plaintiffs" except where necessary to identify any Plaintiff individually), by their attorneys ESENSTEN LAW, complain of the DevaCurl and allege, upon information and belief, the following:

## <u>ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

1.    This is a civil action brought by 64 individual injured Plaintiffs against Defendant DEVA CONCEPTS, LLC, a Delaware Limited Liability Company doing business as DevaCurl ("DevaCurl"), with its principal place of business in the State of New York.

2.    DevaCurl created, formulates, manufactures, markets, advertises and sells multiple hair care products designed for use by consumers with curly hair.  Said products are formulated, marketed and sold throughout the United States and internationally by DevaCurl.

3.    The DevaCurl products at all relevant times hereto, have been touted on the DevaCurl website, www.devacurl.com, as well as through DevaCurl advertising, social media, DevaCurl sanctioned and/or authorized agents and influencers, as, *inter alia*, being free of harsh ingredients, not drying out the user's curls, maintaining healthy and bouncy curls, giving curls everything they need and nothing they don't, and helping to maintain healthy, conditioned, soft and frizz-free hair. As such, consumers, including Plaintiffs, placing their trust in the representations made by DevaCurl, sought out the DevaCurl product line to promote healthy, frizz-free hair while maintaining the curl pattern.

4.    Contrary to the representations made by DevaCurl, Plaintiffs and tens of thousands of consumers across the United States have experienced that normal usage of the DevaCurl products according to product instructions causes hair loss, excessive shedding, thinning, breakage, balding, scalp irritation, loss of curl pattern, and other similar negative results.

5.     DevaCurl provides no warning about these serious and adverse consequences, instead making false and misleading assertions about the safety of its products and concealing the defective nature thereof.

6.     As alleged hereinbelow, Plaintiffs have been damaged and suffered substantial physical, emotional and financial injuries as a direct and proximate result of the actions of DevaCurl.

## VENUE AND JURISDICTION

7.     This action was removed by DevaCurl based on its Notice of Removal filed on October 28, 2020.  The grounds for said removal were 28 *U.S.C.* §§1331, 1367(a), 1332, 1441 and 1446.

8.     This Court has personal jurisdiction over DevaCurl as DevaCurl does business and has its principal place of business in the State of New York, and such contacts with the State of New York were at all time relevant continuous and systematic.

9.     At all times herein relevant, DevaCurl has transacted business within New York, derived substantial revenue from the goods and services provided within New York, engaged in tortious conduct as alleged hereinbelow within New York, and should reasonably have expected its actions to have consequences in New York.

10.     Further, DevaCurl has committed unlawful and tortious acts in this District and the State of New York that it knew or should have known would cause injury to Plaintiffs—acts which give rise to the causes of action asserted herein. DevaCurl engages in the wrongdoing alleged in this Complaint throughout the United States, including New York and its Products are advertised, marketed, distributed, and sold throughout this District and across the State of New York. DevaCurl is authorized to do business in New York and has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, DevaCurl engages in substantial and not isolated activity within New York.

4

11.     Venue is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(c) because DevaCurl (1) conducts substantial business in this District, including, but not limited to, sales of the Product and the operation of two DevaCurl salons, (2) has sufficient minimum contacts with this District, and (3) otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

## CHOICE OF LAW

12.     New York law applies to the claims of all Plaintiffs as alleged hereinbelow. As a federal court sitting in diversity, the Court must apply the choice of law rules for the forum state of New York. *Negri v Friedman*, No. 1:14-CV-10233,GHW, 2017 WL 2389697, at *3 (S.D.N.Y. May 31, 2017) (J. Woods). That analysis begins with consideration of whether there is an actual conflict between the laws of the jurisdictions involved. *Id.* If an actual conflict exists, the law of the jurisdiction having the greatest interest in the litigation will be applied. *Id.* In tort cases such as this, the interest analysis distinguishes between conduct-regulating and loss-allocating rules. *Id.* Plaintiffs' causes of action are conduct-regulating. *See id.,* at *4 (fraudulent misrepresentation and unjust enrichment); *Emslie v. Recreative Indus., Inc.*, No. 08-CV-423-JTC, 2010 WL 1840311, at *9 (W.D.N.Y. May 7, 2010), aff'd sub nom. *Emslie v. Borg-Warner Auto.*, Inc., 655 F.3d 123 (2d Cir. 2011) (negligence, breach of warranty, and strict liability). In such cases, the state where the wrongful conduct occurred. *Holborn Corp. v. Sawgrass Mut. Ins. Co*., 304 F. Supp. 3d 392, 399 (S.D.N.Y. 2018) (J. Nathan).  As described in detail below, the wrongful conduct underlying Plaintiffs' claims occurred in New York, where DevaCurl has its principal place of business, including, but not limited to, the planning, creation and execution of an international advertising campaign by which DevaCurl misrepresented the nature, safety and efficacy of the hair care products that injured Plaintiffs, the design of the dangerous hair care products, the development of instructions and warnings for the hair

care products, the testing of the dangerous hair care products and DevaCurl's receipt of monies paid for the products.

13.     Upon information and belief, at all times herein relevant, DevaCurl was and is authorized to conduct business and conducting business throughout the United States, with its principal place of business at 75 Spring Street, Floor 8, New York, NY 10012. DevaCurl has appeared in this case.

<u>**FACTUAL BACKGROUND**</u>

14.     Upon information and belief, at all times herein relevant, DevaCurl designed, manufactured, marketed, sold and distributed hair care products in various varieties including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Wavemaker, Melt Into Moisture Mask, Styling Cream, B'Leave In, Buildup Buster, Arc AnGEL, Set it Free, Super Stretch Coconut Curl Elongator, and other products (collectively the "Products") in the regular course of business.  DevaCurl directly or indirectly marketed, sold and/or distributed one or more of the formulations of the Products to each Plaintiff herein.

15.     Plaintiffs are all consumers who purchased, used, were exposed to and were injured by their use of the Products.  The Products are home hair care products formulated, manufactured, advertised, marketed, sold and distributed by DevaCurl for use by consumers at home and also used by DevaCurl on consumers in their salons nationwide, recommended by DevaCurl agents and/or ambassadors, recommended by DevaCurl social media, and recommended by DevaCurl influencers whom Plaintiffs are informed and

believe are trained, certified, promoted or otherwise acting on behalf of DevaCurl..

16.    Plaintiffs, and each of them, purchased and used the Products based on multiple false and/or misleading representations made by DevaCurl communicated to Plaintiffs and other customers through the labeling of the products, the use of television advertising, print advertising, internet advertising, representations on DevaCurl's website, recommendations of DevaCurl agents, ambassadors, influencers and stylists, and by other means.  The false and/or misleading representations include, but are not limited to, the following:

    a.    That the Products are innovative alternatives to traditional shampoo;

    b.    That the Products are "rooted in curl science" and subject to "extensive product testing"[1];

    c.    That the each of the Products is tested and validated for quality, safety and performance;

    d.    That the Products are free of sulfates, silicones and parabens[2];

    e.    That the Products are free of harsh chemicals[3];

    f.    That the Products allow the user's hair to become "more of what nature intended";

    g.    That the Products are "free of harsh ingredients"[4];

    h.    That the Products can be used "as often as needed";

    i.    That the Products are "nourishing and hydrating" for every hair type[5]

---

[1] https://www.devacurl.com/us/curl-101/product-philosophy, as of November 11, 2018.

[2] 2 https://www.devacurl.com/us/curl-101/product-philosophy, "Ingredient 101," "The DevaCurl Ingredient 'No' List," as of November 11, 2018

[3] https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html as of November 11, 2018

[4] https://www.devacurl.com/us/about-us/our-story

[5] https://devacurl-blog.s3.amazonaws.com/wp-

> j.     That all of the Products help curls "look and feel healthy, conditioned, soft, defined, shiny, and frizz-free".

17.     DevaCurl promises that customers can forego traditional shampoos and use exclusively DevaCurl products, stating "all you're left with is beautiful, healthy curls that can handle any style you feel like trying."[6] "[F]rizz, stubborn tangles, dullness and dryness will improve big-time (if not flat-out disappear) when you start using one of our gentle cleaners followed by a nourishing DevaCurl conditioner."[7] A consumer's only fear is how much she will like the results.  "Warning:  Once you go Deva, you'll be hooked!"[8]

18.     DevaCurl also uses its website to induce customers to believe that celebrities and other well-known individuals use the Products, even naming one of its website buttons "celeb news," where it includes pictures of Sarah Jessica Parker, Lisa Bonet, Keri Russell, among others.[9] Here Defendant features stylists to the stars and other stories that are meant to suggest the Products are the secret to celebrity-looking hair.  DevaCurl also suggested that former first lady Michelle Obama endorses the Products[10].

19.     In addition, DevaCurl uses "before and after" photos of what purport to be the "average" consumer, but who are in fact paid models who do not regularly use the

---

content/uploads/2021/06/11213657/devacurl_ingredients_we_do_not_use.pdf

[6] https://web.archive.org/web/20180217225113/http://www.devacurl.com/products/cleanse-and-condition.html, as of November 11, 2018.

[7] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, "Getting started with Deva cleansers and conditioners," as of November 11, 2018.

[8] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, Introduction, as of November 11, 2018

[9] https://www.devacurl.com/blog/?sfid=1632&_sft_category=celeb-news, as of January 25, 2022.

[10] https://www.devacurl.com/blog/deva-inspired-stylist-yene-damtew-used-devacurl-michelle-obamas-iconic-curls-essence-fest/, as of November 11, 2018.

Products as recommended by Defendant[11] and, unbeknownst to consumers, Plaintiffs, in particular, the posted pictures show hair that has been styled  professional help for makeup and hair.

20.     Plaintiffs are informed and believe and based thereon allege that DevaCurl also markets through the use of "influencers", and pays for mentions on blogs and in other social media, using influencers, usually those influencers who identify as members of the curly hair community and dedicate a significant portion of their content to curly hair maintenance, routines and other tutorials. An influencer accepts payment to promote a particular good or service on social media, such as Instagram, YouTube and/or Twitter, for which they have a large audience.  DevaCurl hires influencers as part of its overall marketing strategy and directs these influencers with regard to Product-related content. *See, infra,* Allegations regarding Agency.

21.     Plaintiffs are informed and believe and based thereon allege that DevaCurl compensates influencers based on the size of their audience, commissions on sales of the Products made through "affiliate links" on their social media sites and/or with free Products. DevaCurl does not disclose to consumers its financial relationship with influencers. Similarly, it does not disclose to consumers that it controls the content of its sponsored influencers.

22.     In addition, Plaintiffs are informed and believe and based thereon allege that DevaCurl engages "DevaCurl ambassadors" or brand ambassadors.  As opposed to influencers, brand ambassadors are existing customers whom DevaCurl has identified as brand loyalists willing and capable of promoting the Products with their friends. Brand ambassadors usually have a much smaller audience than influencers and, thus, are sometimes referred to as micro-influencers. DevaCurl incentivizes these brand ambassadors

---

[11] That is to say, to the exclusion of all other products or, at the very least, without use of traditional shampoos.

to promote the Products, on information and belief, through direct payment, commissions on sales through affiliate links and/or free Products or hair styling services. DevaCurl controls the Products-related content of brand ambassador posts as with influencers.

23.     DevaCurl solicited brand ambassadors on its website until early 2020, when one of its most prominent influencers expressed serious concerns about the safety of the Products. As with influencers, DevaCurl does not disclose its financial relationship with brand ambassadors nor its role in the process of developing Products-related content, the result of which is that consumers are led to believe the representations made by influencers and ambassadors are independent, rather than content curated by DevaCurl to influence the purchasing decision. Consumers find influencer-content to be more credible than the content directly put out by the brand, and therefore trust influencers when making decisions[12].

24.     In addition to social media and influencer marketing, DevaCurl directly operates two Devachan salons in New York City.[13] In addition, DevaCurl trains stylists nationwide so consumers can buy its services and products.[14] DevaCurl offers a DevaCurl

---

[12] False Influencing, 3-4 (citing Gavin O'Malley, *Many Followers Trust Influencers' Opinions More Than Friends'*, Digital World Daily (Aug. 21, 2019) https://www.mediapost.com/publications/article/339579/many-followers-trustinfluencers-opinions-more-th.html [https://perma.cc/F7NH-SNRC] (In a 2019 Sideqik poll, 70% of consumers surveyed said that they trust the opinions of influencers as much or more than those of their real-world friends.).

[13] https://www.devacurl.com/us/salons, as of November 11, 2018.

[14] *Id.*

academy at which a stylist can become DevaCurl certified after completing three levels of paid curriculum.[15]

25.     The Products are central to the DevaCurl training.[16]  DevaCurl actually offers free online training so that a stylist in any location can begin using, recommending and selling the Products.  DevaCurl promotes stylists who complete the paid training on its website through a directory program on its website,[17] by providing marketing materials[18] and strategy and through stylist support services.[19]

26.     DevaCurl also sells the Products through major beauty industry retailers, including but not limited to Sephora, Walgreens, Ulta Beauty, Target and Wal-Mart, pursuant to written agreements.  Plaintiffs are informed and believe and based thereon allege that DevaCurl provides these retailers with product descriptions and other promotional materials, which the retailers are required to use in their promotion of the Products.

27.     DevaCurl does not disclose to customers, and did not disclose to Plaintiffs, the relationship between DevaCurl and the influencers, ambassadors, stylists and retailers who promote the Products.  However, pursuant to guidance issued by the Federal Trade Commission (the "FTC") in 2009, "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed." Guides Concerning Use of Endorsements and Testimonials in Advertising, 16 C.F.R. § 255.5 ("FTC Guidelines"). The failure of

---

[15] https://www.devacurlpro.com/us/education, as of November 11, 2018..

[16] https://www.devacurlpro.com/us/education, Product Pro, as of November 11, 2018..

[17] https://www.devacurl.com/finder, as of November 11, 2018. *See also* Exhibit A, 24, 26, 27.

[18] https://www.devacurlpro.com/us/marketing-downloads

[19] https://www.devacurlpro.com/us/education/stylist-finder, "got questions, we've got answers!"

DevaCurl to disclose its payments and other financial incentives offered to influencers, brand ambassadors, hair stylists, celebrities and retailers and its control over the content of the promotional message of these third parties constitutes a violation of FTC Guidelines.

28.    By way of the its website, magazine advertising, social media accounts, community of affiliated salons, influencer and brand ambassador programs, DevaCurl Academy, DevaCurl certified and other DevaCurl-exclusive and trained stylists, endorsements, apparent celebrity endorsements, transformation photos and videos, testimonials, retail suppliers and other direct marketing channels, all as part of an international advertising campaign, DevaCurl's promotion of the Products includes multiple false and/or misleading representations, including, but not limited to those representations set forth hereinabove, and that the Products are "safe", "gentle", "do not strip hair of natural oils", contain only "good" ingredients, the Products should be used exclusively, the Products are extensively tested using appropriate safety protocols, and that the endorsements of retailers, influencers, ambassadors and stylists are not paid endorsements.

29.    Contrary to the false and/or misleading representations made by DevaCurl, the Products contain large quantities of non-water soluble oils and silicones but lack sufficient cleansers to remove these ingredients, leading to build up and impacting of dead skin cells, dirt, debris, and the Products themselves on the hair follicle and on the scalp, which buildup increases over time.

30.    These conditioning agents include glycerin and other plasticizing agents, all of which reduce the strength of hair, leading to breakage and damage, particularly with curly hair that is drier and more fragile than straight hair because of the physiology of the hair follicle.

31.    This overuse of conditioners and plasticizing agents combined with underuse of sufficient cleanser leads to very serious injuries. Because the Products coat the hair and scalp with substances that are difficult to remove using regular shampoos, much less the Products' inadequate cleaners, in addition to weakened and damaged hair, users develop

clogged, inflamed, impacted and infected hair follicles—in other words, Seborrheic Dermatitis ("SD")—characterized by red, itchy, inflamed, blistered, flaking or scaling skin as well as hair loss, as experienced by Plaintiffs herein. This, in turn, can lead to yeast and bacterial infections as microbes have been shown to increase with SD and thrive on the conditioning agents found in the Products.[20] DevaCurl concedes as much. In a blog about hair shedding, DevaCurl points to scalp build up as a potential cause of hair loss.[21]

32.  At the time of filing of the Complaint herein, many of the Products contained ingredients DevaCurl expressly stated they did not, including sulfates and silicones.

33.  At the time of filing of the Complaint herein, some of the Products, including Set it Free, which is a leave on product, also contained formaldehyde and/or formaldehyde releasers[22]—an allergen, carcinogen and endocrine disrupter to which such a relatively large and growing portion of the population is allergic or sensitized. In fact, the American Contact Dermatitis Society named it "allergen of the year" in 2015. In addition, formaldehyde is one of only five chemicals that have been listed by the Consumer Product Safety Commission as a "strong sensitizer" since 1961.

34.  The Products also contain plant extracts not commonly used in cosmetic products and to which many consumers may be sensitized or allergic.

35.  Likewise, DevaCurl generically lists "fragrance" on its ingredient list without disclosing the ingredients it uses for this purpose. Regulatory agencies and other scientists have long found fragrance ingredients to be problematic in cosmetic products.

---

[20]  *Id.*

[21]  https://www.devacurl.com/blog/hair-shedding -101

[22] Formaldehyde releaser is term used to refer to ingredients that release formaldehyde over time. As industry standard has moved away from use of the formaldehyde, Plaintiffs are informed and believe that manufacturers like DevaCurl use formaldehyde releasers in an attempt to fool consumers since the chemical names for these components are not widely known. Hereinafter, Plaintiffs refer to both formaldehyde and formaldehyde releasors as "formaldehyde."

Hydroxy citronellal and a related substance, Hydroxyisohexyl 3-Cyclohexene Carboxaldehyde, commonly referred to collectively as HICC, are good examples. Similar to formaldehyde, HICC causes contact allergic dermatitis in a large and quickly growing percentage of the population.[23] "HICC has for more than 10 years been recognized as an important allergen with more cases documented in the scientific literature than for any other fragrance chemical in this period. HICC has been shown to be a significant cause of disease . . . ."[24] Consequently, in 2012, the SCCS recommended HICC be banned for use in all consumer products.[25] In 2017, the SCCS found HICC (and fragrances atranol and chloroatranol) unsafe for use in cosmetic products[26] and the European Union has since banned their use.

36.     As with formaldehyde, there is currently no U.S. regulation for fragrance substances like HICC. However, the International Fragrance Association ("IFRA") promulgates standards known as the IFRA Standards and part of the IFRA Code of Practice, which "form the basis for globally accepted and recognized risk management system for the safe use of fragrance ingredients." In 2014, IFRA also called for the discontinuation of HICC in consumer products.[27]

37.     Sensitivity to formaldehyde, plant extracts and fragrance ingredients may develop over time, and the likelihood of becoming sensitized or allergic to it increases with

---

[23] Scientific Committee on Consumer Safety, Opinion on Fragrance Allergens in Cosmetic Products, at 8, 11-14, 98-102, found at https://ec.europa.eu/health/scientific_committees/consumer_safety/docs/sccs_o_073.pdf.

[24] *Id.* at 102.

[25] *Id.* at 8.

[26] *See* http://www.echemi.com/cms/3261.html.

[27] *See* Comments to EU Commission Proposals on Fragrance Allergens, Internt'l Fragrance Assoc'n, May 9, 2014, found at https://ifrafragrance.org/docs/default-source/position-papers/23431_pp_2014_05_09_ifra_comments_to_public_consultation_on_allergens_9_may_2014-(1).pdf?sfvrsn=188bcd9d_6.

the amount and duration of exposure and upon subsequent exposure. Those with sensitivity can have reactions ranging from allergic contact dermatitis ("ACD"), resulting in red, itchy, inflamed and/or blistered skin, to severe chemical burns.  ACD (and chemical burns), in turn, lead to extreme diffuse hair loss according to treating physicians[28] and researchers.[29] In more serious cases, exposure to this sort of allergen can trigger a more systemic auto immune disease, such as alopecia areata, an auto-immune related hair loss. As discussed by the National Association of Alopecia Areata, alopecia areata is a condition understood at this time to be caused by, among other things, external substances, such as allergens.[30] Just as with ACD, the exposure stimulates the body's immune system, causing it to mistake—and attack— normal cells for foreign invaders.[31]

38.    DevaCurl's instructions for use of the Products exacerbate these injuries. DevaCurl tells customers the No-Poo products are the first in a three-step process to beautiful, healthy curls, instructing customers to use its cleansing conditioner products (the "No-Poo" products) to the exclusion of all other cleansers, most especially traditional shampoo. It also directs users to apply the No-Poo products directly to their scalp one section at a time. "The product won't spread on its own, so use your fingertips to massage it evenly over the scalp. Take the time to really get in there with your fingers and rub vigorously all over your scalp."[32] The videos demonstrating this process encourage

---

[28] *See* Dr. Mona Gohara, Your Conditioner Could Actually be Causing Hair Loss, Fitness, (APP 133-34).

[29] Dr. Antonella Tosti, et al., *Telogen Effluvium After Allergic Contact Dermatitis of the Scalp*, Arch Dermatol., February 2001, (APP 135-147).

[30] *See* Nat'l Alopecia Areata Foundation, *What You Need to Know About Alopecia Areata*, https://www.naaf.org/alopecia-areata.

[31] *See id.*

[32] https://www.devacurl.com/blog/the-complete-guide-to-getting-started-with-devacurl/, as of November 11, 2018.

15

consumers to use large palmfuls of the Product for each section of the scalp, much more than is standard for other products.[33]

39.    DevaCurl also recommends use of multiple leave on DevaCurl conditioners and styling products, increasing both the amount and duration of exposure in that way as well

40.    DevaCurl's marketing of the Products also exacerbates injury and has prevented Plaintiffs and others from discovering they had suffered cognizable injuries caused by the wrongful conduct of DevaCurl.  It never occurred to Plaintiffs and other users that the Products—touted by DevaCurl as gentle, safe, free from harsh chemicals and science-based—could actually be hurting their hair and scalp, not helping, nor in the exercise of reasonable diligence could Plaintiffs have known.  To the contrary, many believed their situation would have been worse but for the Products. Some worried that their hair loss, scalp issues and other personal injuries could be symptoms of a dire health condition. Many of them went from doctor to doctor desperate for answers, all to no avail.

41.    DevaCurl exacerbated the situation and further misrepresented to Plaintiffs, by failing to disclose—indeed, actively concealing— the number of complaints of hair loss, scalp issues and other injuries it has received from customers and the FDA. DevaCurl describes most hair shedding as normal and unavoidable[34], and attributes excessive hair loss to many other potential causes, such as stress, dandruff, losing weight, medical conditions, and giving birth, among others.[35] DevaCurl also removed discussion of these sorts of injuries from social media under its influence or control. Had DevaCurl

---

[33] https://www.devacurl.com/us/curl-101/how-to-deva-3-step/super-curly-deva-3-step

[34] https://www.devacurl.com/blog/hair-shedding -101

[35] *Id.*

transparently disclosed these complaints, some Plaintiff would have identified the Products as the culprit much sooner, and some could have avoided injury altogether.

42.    Although DevaCurl claims to conduct "extensive product testing" prior to placing the Products on the market, that pre-market testing often amounts to no more than using its Products in its own Devachan salons."[36] This so-called testing is not scientific, and it does not meet industry standards.  At a minimum, a clinical study is controlled to isolate the product and ensure uniformity in its procedure, it includes a statistically significant number of participants and it uses doctors and scientists to assess exposure on par to a consumer's actual use of the product for a time period that allows for scientifically sound results. Rather than engage in scientific studies to ensure product safety, Defendant actually belittles some industry standard testing methods, "[w]e test our products on actual people, not mannequins or hair swatches. Devachan Salon is our thinktank and product ***playground*** . . . ."[37]

43.    Only recently, after thousands of people have reported hair loss, scalp issues and other personal injuries, DevaCurl claims to have "worked with an independent third-party toxicologist to verify the safety of [its] (sic) formulas."[38] DevaCurl has refused, however, to make those tests public despite the desperate pleas of Plaintiffs and other injured consumers who are trying to understand why and to what extent they have been harmed. Instead, DevaCurl has posted summaries of certain testing it now claims was

---

[36] https://www.devacurl.com/us/curl-101/our-story, extensive product testing, as of November 11, 2018. .

[37] https://www.devacurl.com/us/curl-101/our-story, curlfriend & stylist tested and approved (emphasis added), as of November 11, 2018.

[38] https://www.devacurl.com/us/deva-community-statement, (sic) devacurl statement

performed prior to marketing the product, including the very testing done on mannequins or hair swatches it denounces in other areas of its website.[39]

44.    Plaintiffs are unable to review the actual test results which have not been disclosed by DevaCurl; however Plaintiffs can draw certain conclusions from the summaries alone.   For instance, many of the tests which DevaCurl claims prove the Products safe, such as the product stability and ocular tests, are not designed to detect defects that would result in Plaintiffs' injuries. These tests do not exonerate the Products.

45.    Other testing, such as the Human Repeat Insult Patch Testing and Forty-Eight Hour Patch Testing (collectively "HRIPT"), must use adequate concentrations of the product (and with a statistically significant number of test subjects) to give accurate indication of the Products' safety. Scientific standards for these concentrations have changed given new information about reactions at lower dosages. Unless these tests used the latest concentration standards, the results say nothing about product safety. In fact, given use of formaldehyde in some of the Products, it would be reasonable to expect a reaction in some percentage of the test subjects, thus DevaCurl's claim that results show "no potential for dermal irritation or allergic contact sensitization" suggest the tests were not performed to standard.

46.    In addition, the toxicology reports to which DevaCurl refers must also take into account (1) scientific research revealing human reactions at much lower dosages than previously believed, (2) many of the Products are intended for leave on usage, (3) the extraordinary amount of the No-Poo products recommended for use by DevaCurl, and (4) how ingredients in the formulae work together, not just in isolation. Further, DevaCurl does

---

[39] https://devacurl-blog.s3.amazonaws.com/wp-content/uploads/2020/03/10140715/DevaCurl-Testing.pdf, as of November 11, 2018.

not even purport to have performed patch testing and toxicology reports for *all* of the Products.

47.     Although Plaintiffs are informed and believe and based thereon allege that DevaCurl has received thousands of complaints directly, and countless others through the FDA, social media and major media outlets, it has failed and refused to formally recall any of the Products, or issued any new warnings or otherwise disclosed the defects and dangers associated with the Products.

48.     DevaCurl did undertake what amounts to a voluntary recall. Although DevaCurl usually accepts returns and issues refunds only for Products returned within sixty (60) days of purchase, after growing concerns about the safety and efficacy of the Products became public, DevaCurl allowed customers to return Products, with no questions asked and no requirements for the return/refund, for a full refund without regard to the date of purchase and the amount of product left in the returned bottle(s).

49.     DevaCurl has failed to warn Plaintiffs and other consumers about the adverse consequences of normal use of the Products.  In fact, DevaCurl's own website intentionally discounts and disclaims hair loss and shedding, both claiming that those results are normal and also by blaming those damaging results on other factors unrelated to their Products[40]. The effect of this is to cause Plaintiffs and other consumers to feel that they are to blame for the hair and scalp damages caused by the Products.

50.     Use of the Products as instructed by DevaCurl and its agents and ambassadors has caused Plaintiffs and other consumers to sustain severe injuries and damages such as, but not limited to hair loss, excessive shedding, thinning of hair, scalp irritation, hair breakage, frizzing, disruption of the natural curl pattern, and other types of damage to their hair and scalp.  In addition, injuries to the endocrine system, including

---

[40] On its website, DevaCurl acknowledges the reports of hair damage and scalp irritation caused by the Products yet nonetheless has not formally recalled the Products or provided any warnings of the known risks associated therewith.

infertility and systemic auto immune responses, are potential injuries from use of the Products. Furthermore, Plaintiffs have experienced severe mental and emotional injuries directly arising from the damages to their physical wellbeing, hair and scalp, including but not limited to depression, embarrassment, loss of self-esteem, relationship issues, and other types of damage. Plaintiffs did not know, nor in the exercise of reasonable diligence could have known, that the injuries as alleged herein were caused by the Products until at the earliest, early 2020 when news of consumers being injured by the Products was spread nationwide.

51.    As alleged herein, DevaCurl failed to disclose to Plaintiffs and other consumers that the Products contain ingredient(s) that cause hair loss, breakage, thinning, balding, change in curl pattern, rashes and other injuries, damages and unexpected results when used by the consumer. DevaCurl failed to properly warn Plaintiffs and other consumers of the risks and dangers involved with their use of the Products, even after DevaCurl became aware that the Products had caused, and were continuing to cause, consumers to suffer the severe injuries and damages as alleged herein. Further, DevaCurl failed to recall the Products from the market even after becoming aware that the Products had caused, and were continuing to cause, consumers to suffer the severe injuries and damages as alleged herein.

52.    DevaCurl's advertising and marketing of the Products is intended to and does represent to consumers, including but not limited to Plaintiffs, that the Products are safe, different from, and superior to, other curly hair products available on the market.

53.    Plaintiffs were led to believe that the Products were gentle, healthy, effective, safe (meaning, *inter alia,* free of dangerous chemicals or ingredients and not damaging to hair) and fit for use as a hair product by consumers at home, even with daily usage. Plaintiffs and other consumers reasonably expected that the Products would not cause hair breakage, balding, thinning, change in curl pattern, scalp rashes or other painful, unsightly or dangerous conditions. Plaintiffs and other consumers further reasonably expected that

DevaCurl would disclose the risks of the Products and previous injuries caused by the Products known to DevaCurl, or that could have been known to DevaCurl in the exercise of reasonable diligence, rather than continuing to market, sell and distribute the Products to customers.  Plaintiffs and other consumers further reasonably expected that DevaCurl had tested the Products to determine if any particular susceptibility to injuries from the Products existed, and that DevaCurl would warn of any results related to the particular susceptibility of certain consumers or types of consumers to injury from usage of the Products.

54.    The representations and warranties by DevaCurl were in fact false.  Contrary to the representations and warranties by DevaCurl, the Products do, in fact, contain dangerous or damaging ingredients which cause hair breakage, balding, thinning, curl damage, scalp rashes and other painful, unsightly and dangerous conditions.

55.    Through various forms of warranties, advertising, marketing, package labeling, and information on DevaCurl's website, as set forth in detail herein, which information was placed into the public by DevaCurl for viewing and use by consumers such as Plaintiffs, as well as by influencer and social media marketing, Plaintiffs were informed and reasonably believed that the Products would perform as advertised and as reasonably expected, and were safe for use on their hair and free of harsh or dangerous chemicals that could cause the severe injuries and damages as alleged herein. .

56.    By advertising, marketing, selling and distributing the Products, DevaCurl made actionable statements upon which DevaCurl intended Plaintiffs to rely upon that the Products were fit for their intended use and free of defects, and that the use would not lead to undisclosed safety risks and damages.

57.    The Products did not perform as labeled, marketed, warranted, advertised or represented when used in a reasonably foreseeable manner.

58.    DevaCurl had an obligation to adequately warn consumers, including Plaintiffs, about the inherent and unreasonable risks and dangers associated with use of the

Products, including, but not limited to, severe hair damage, balding, thinning, hair breakage, damage to curl pattern, hair loss, skin irritation, and other damage.

59.    DevaCurl knew or should have known that the Products posed material risks including, but not limited to, severe hair damage, balding, thinning, hair breakage, damage to curl pattern, hair loss, skin irritation, and other damages.

60.    Despite the foregoing, DevaCurl never disclosed such material risks, even after obtaining actual and/or constructive knowledge thereof, and in fact attempted to dismiss or discount such adverse consequences on the DevaCurl website.

61.    DevaCurl did not provide any warning language in the instructions, packaging and advertising of the Products, either on the Products themselves, in the television, print and internet advertising, or on their websites.  The inherent danger in the lack of warnings include, but are not limited to, the following:

      a.    No warnings were given as to the negative results that could occur with usage of the Products even when the consumer followed the instructions regarding usage of the Products.

      b.    No warnings were given regarding prior damaging results of usage of the Products by consumers, despite such results being within the actual knowledge or constructive knowledge of DevaCurl.

62.    The instructions and labeling on and included with the Products and in DevaCurl's advertising did not indicate or suggest that the Products were not safe if used in the manner instructed, and Plaintiffs had no reason to believe that the Products were not safe when used.  As the Products are beauty products and not expected by the average consumer, including Plaintiffs, to be inherently dangerous, Plaintiffs were entitled to and did believe that the Products were safe and would not cause damage to hair, scalp or other injuries.  The information provided in the written and published advertising and instructions is a representation to consumers, including Plaintiffs that the Products would perform as expressly warranted and would do so safely.

63.     The representations and warranties made by DevaCurl create and perpetuate a false perception that there was no risk of personal injury to the consumer in using the Products.

64.     After using the Products according to instructions, Plaintiffs experienced results which generally include, but are not limited to severe hair damage, balding, thinning, hair breakage, damage to curl pattern, hair loss, skin irritation, emotional distress and other damages.

65.     The Products caused drastic alteration of Plaintiffs' personal appearances, lowering their self-esteem and destroying their willingness to be seen by friends, neighbors, or people in their workplaces, and sometimes impacting their personal and physical relationships with spouses and significant others.

66.     Such harm to their appearances and their sense of self and well-being have led Plaintiffs to take drastic and expensive measures in attempts to recover their former appearance (including cutting off of all or most of the hair, salon treatments, medical treatments, home remedies and wigs) only to find that the Products have irrevocably damaged both hair and scalp.

67.     Plaintiffs, and each of them, were not aware at the time of injury that the actions of DevaCurl had caused the injuries and damages as herein alleged.  Plaintiffs, as lay consumers, did not know, and in the exercise of reasonable diligence could not have known, that the products and the actions of DevaCurl in developing, manufacturing, advertising, marketing, selling and distributing the products were the cause of any damages sustained by them.

## AGENCY AND PRIVITY OF THIRD PARTIES

68.     To the extent third parties made false and misleading statements to Plaintiffs (see Plaintiff-Specific Factual Allegations, below), the third parties were agents of DevaCurl and made said representations on behalf of DevaCurl with the consent of both the DevaCurl and the third party, using information and promotional materials provided by

DevaCurl to the third party for the purpose of promoting the Products and otherwise subject to DevaCurl's control.

69.    With particular regard to influencers, DevaCurl curates the imagery and content of their posts. DevaCurl specifically tells influencers what to say in the videos—not necessarily scripting every word as DevaCurl prefers the influencers use some of their own words to ensure the message does not come across as the calculated marketing that it is—but identifying the Products and Products' purported attributes to be featured and the directing the influencer's feedback regarding the Products and their featured attributes. Conversely, DevaCurl also tells influencers what they should **not** say or convey as part of their marketing on DevaCurl's behalf. DevaCurl reserves and exercises its the right to select the videos and photos that will be posted by influencers (and, by that same token, reject the remaining footage and images as outtakes) and to edit any copy that will accompany a post. DevaCurl also carefully directs all filming, both video and still shots, including selection of the shooting location; hair and make-up artists; and clothing. Similarly, DevaCurl instructs the photographer/videographer as to the message that should be achieved through the photography/video. In addition to payments made to influencers on a commission basis (dependent on sales), DevaCurl also pays for the influencer's transportation and lodging to participate in filming.

70.    By participating in the creation and dissemination of content under the direction and control as alleged hereinabove, the influencers accept the instructions, direction, curation and control of DevaCurl, and agree that DevaCurl is to be in control of the instructions, direction, and curation of DevaCurl over said content.

71.    On information and belief, DevaCurl directs the content of brand ambassadors in much the same way as influencers as set forth hereinabove, inasmuch as it tells these ambassadors what to say and what **not** to say in Products-related posts, while also reserving and exercising the right to edit and/or censor the content and imagery of ambassador posts.

Of course, DevaCurl also provides content to ambassadors with instructions for them to use the content in original Products-related posts or to repost DevaCurl-posted content.

72.    By participating in the creation and dissemination of content under the direction and control as alleged hereinabove, the brand ambassadors accept the instructions, direction, curation and control of DevaCurl, and agree that DevaCurl is to be in control of the instructions, direction, and curation of DevaCurl over said content.

73.    DevaCurl also controls what stylists and salon owners have to say about the Products. On information and belief, DevaCurl conditions participation in training or Products (re)sale programs on an agreement to speak and act on DevaCurl's behalf to sell the Products. Furthermore, DevaCurl instructs its Deva-trained stylists and salon owners to describe the Products and their purported attributes using only those representations made and approved of by DevaCurl during the training and/or as part of its salon certification process. DevaCurl reserves and exercises its right to edit and censor what stylists have to say about the Products. If a stylist fails to toe the line dictated by DevaCurl, DevaCurl can and will fire those stylists working at company-owned salons. For those stylists who are Deva certified or sponsored, DevaCurl uses the threat of being removed from the DevaCurl's online stylist/salon directory, withdrawing its certification or sponsorship and/or withholding supplies of Products for resale in salons.

74.    By participating in the creation and dissemination of content under the direction and control as alleged hereinabove, the stylists and salon owners accept the instructions, direction, curation and control of DevaCurl, and agree that DevaCurl is to be in control of the instructions, direction, and curation of DevaCurl over said content.

75.    On information and belief, DevaCurl controls representations made by retailers about the Products by way of agreements that require retailers to promote the

Products on DevaCurl's behalf using DevaCurl's branding and DevaCurl-provided or approved marketing content, imagery and strategy.

76.    In these ways, DevaCurl expressly directed these third party agents to make the false and misleading statements on which Plaintiffs relied, or, by virtue of DevaCurl's promotion of these third parties on its website and in other advertisements and its training of these agents, the agents and Plaintiffs reasonably believed the agents were authorized to make these statements in their promotion of the Products to Plaintiffs. Furthermore, DevaCurl provided the false and misleading information to these third parties as part of a strategic advertising campaign pursuant to which there was an agreement between DevaCurl and the third parties that the information would be disseminated by the third parties to consumers like Plaintiffs. Plaintiffs relied on these false and misleading statements and acted reasonably in doing so.

<strong><u>PLAINTIFF-SPECIFIC FACTUAL ALLEGATIONS</u></strong>

77.    Plaintiff ALEXA BATES is a resident of Los Angeles, California, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, DevaCurl Leave-In Decadence hair conditioner, Melt Into Moisture Mask, and Styling Cream from approximately 2014 until approximately February, 2020.  She relied on the labeling, marketing and advertising of the Products by DevaCurl in making her decisions to purchase and use the Products, including the recommendations of her stylist Shai Amiel in Studio City, CA, whom Ms.  Bates is informed and believes was acting as an agent or ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  In addition, she subsequently visited the DevaCurl website and relied on the product descriptions when trying out new Products.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training

26

and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

78.    Plaintiff EMINA ABDAGIC is a resident of Iowa City, Iowa, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, and Styling Cream from approximately 2016 until approximately 2017. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations on the DevaCurl website that the Products were paraben-free, fit for her curl type, and would make her hair moisturized as well as manageable. She also relied on YouTube videos posted by influencers who raved about the Products and represented that the consumer can leave the conditioner in the hair and it would be beneficial; in addition Ms. Abdagic relied on the Sephora consultants in the Coral Ridge Mall in Coralville, IA, who represented that the Products were great for curly hair and would not strip the hair of moisture. Ms. Abdagic is informed and believes that each of the aforementioned was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. She used the Products and as a result thereof

experienced poor hair condition, scalp irritation, embarrassment, and an unwanted change in her appearance. She had no reason to know, and could not have in the exercise of reasonable diligence have known, that the Products were or could have been the cause of her injuries until the dangers associated with the Products became public in or around early 2020.

79.     Plaintiff GABRIELLA AGUILERA is a resident of Corona, California who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Light Defining Gel, DevaCurl No-Poo Decadence hair cleanser, and DevaCurl Leave-In Decadence hair conditioner, from approximately 2018 until approximately December 2019. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the advertising, the DevaCurl salons, and the recommendations of stylists, all of whom Ms. Aguilera is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in

emotional distress, embarrassment, loss of self-esteem, social and relationship issues, and an unwanted change in her appearance.

80.    Plaintiff YAZMIN ALI is a resident of Spotsylvania, Virginia who used the Products, including but not limited to DevaCurl Styling Cream and Buildup Buster Hair Cleanser from approximately 2019 until approximately March 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the representations on the website that the Products were hypoallergenic, put moisture into curls, added volume, and were co-developed with a dermatologist; Ms. Ali also relied on information received at Ulta in Fredericksburg, VA, whom Ms. Ali is informed and believes was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  She used the Products and as a result thereof experienced hair loss, hair breakage poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

81.    Plaintiff ASHLEY ARACENA is a resident of Jersey City, New Jersey who used the Products, including but not limited to DevaCurl Leave-In Decadence hair conditioner and Ultra Defining Gel, from approximately 2018 until approximately February 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly on the advertising, influencers and social media accounts of DevaCurl, and each of whom Ms. Aracena is informed and believes was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl, including but not limited to Ayesha Malik, Penny Tovar, Jayme Jo, Lynn Kate, Manes by Mell, Bianca Renee and India Batson.  She used the Products and as a result thereof experienced hair loss, bald spots, poor hair condition, hair

thinning, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem and an unwanted change in appearance.

82.    Plaintiff ROBYN ARLAN is a resident of Mountain Home, Texas who used the Products, including but not limited to DevaCurl One Condition® Original hair conditioner, and DevaCurl One Condition® Decadence hair conditioner, from approximately 2018 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the DevaCurl advertisements that popped up after she did a google search regarding the Products, which advertisements represented that use of the Products would result in smooth, shiny and healthy hair with no chemicals, dyes or artificial ingredients that could damage her hair.  She used the Products and as a result thereof experienced hair loss, hair breakage, hair thinning, change in curl pattern and bald spots, resulting in emotional distress.

83.    Plaintiff LA CANADA ASUNCION is a resident of Tacoma, Washington, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl Ultra Defining Gel, Deva-Curl Low-Poo Original cleanser, DevaCurl Leave-In Decadence hair conditioner, DevaCurl Super Stretch Coconut Curl Elongator, and Wavemaker from approximately 2017 until approximately 2018.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the recommendation of Sally's Beauty Supply, whom Ms. Asuncion is informed and believes was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   She used the Products and as a result thereof experienced poor hair

condition, hair breakage, loss of curl pattern, embarrassment, emotional distress and an unwanted change in her appearance.

84.    Plaintiff LISA ATLAS is a resident of Califon, New Jersey who used the Products, including but not limited to DevaCurl No Poo Original non-lathering conditioning cleanser, DevaCurl One Condition Original hair conditioner, DevaCurl Styling Cream, Ultra Defining Gel, Supercream and Coconut Curl Cream from approximately 2018 until approximately June 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations on the DevaCurl website.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, loss of thickness and volume, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

85.    Plaintiff TRACI BATES is a resident of Los Angeles, California who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Super Cream, Arc AnGEL and Set it Free Spray from approximately 2014 until approximately March 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the information and representations on the DevaCurl website and social media as to the efficacy on curly hair, the different formulations of the Products, and the presence of Black women in the website advertising was an influence as well.  Ms. Bates is informed and believes that the influencers on social media were acting as  ambassadors on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  In addition, Ms. Bates relied on the

31

representations and advice of stylist Shai at the DevaCurl certified Capella Salon in Studio City, CA, and whom Ms. Bates is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, hair breakage, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, relationship and social issues, and an unwanted change in appearance.

86.    Plaintiff HELENE BEGUN is a resident of Montauk, NY who used the Products, including but not limited to DevaCurl One Condition Original Hair Conditioner, DevaCurl Light Defining Gel, DevaCurl Low Poo Original Cleaners, DevaCurl No-Poo Decadence Conditioner, Ultra Defining Gel, B'Leave In, Arc AnGEL and Frizz Free Volumizing Foam, from approximately 2010 until approximately April 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly relying on the DevaChan salon and stylists in New York City, whom Ms. Begun is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on

DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, substantial loss in hair volume and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

87.    Plaintiff GEORGEANN BENEDICT is a resident of Fairlawn, Ohio who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, Heaven in Hair, Devine Deep Conditioner, Miracle Curl Plumper and B'Leave In for several months in early 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, primarily the DevaCurl book that she read from cover to cover, paying particular attention to the "science" behind the Products and the representations that the Products would be good for her hair.   She used the Products and as a result thereof experienced hair loss, hair thinning, and bald spots, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

88.    Plaintiff SHENISHIA BOOTH is a resident of Peoria, Arizona who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair

cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Wavemaker, Melt Into Moisture Mask, Styling Cream, Super Stretch Coconut Curl Elongator, and Build Up Buster from approximately 2013 until approximately January, 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly relying on the DevaCurl salon, whom Ms. Booth is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   .  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, scalp irritation and change in curl pattern, resulting in embarrassment, emotional distress, self-esteem issues, and unwanted change in appearance.

89.    Plaintiff ELIZABETH BRUSS is a resident of Rochester, Minnesota, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, Build Up Buster, and DevaCurl One Condition® Delight hair conditioner, from approximately 2013 until approximately April, 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the representations on the DevaCurl website as to specific

34

descriptions of various Products and the hair issues for which each was recommended (such as Buildup Buster to remove buildup, Deep Sea Repair as a protein/strengthening treatment). Ms. Bruss also relied on the advice and representations made by Kathy Puetz at Salon Nuovo in Rochester, MN, a certified DevaCurl salon, and Mandy Shaw at Edge Salon in Rochester, MN, also a certified DevaCurl salon, and each of whom Ms. Bruss is informed and believes were acting as an ambassador or agent on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, bald spots, hair thinning, change in curl pattern and scalp irritation, resulting in emotional distress.

90.     Plaintiff LUCY ANN BURKE is a resident of Kingston, Massachusetts, who used the Products, including but not limited to DevaCurl Ultra Defining Gel from approximately 2019 until approximately June, 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, in that she was provided a sample by her stylist at Rebel Salon in Norwell, MA, Michelle Medieros, whom Ms. Burke is informed and believes was acting as an authorized agent, ambassador or representative of DevaCurl in providing said sample and encouragement to use the Products. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training

and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

91.     Plaintiff YENNIFER CAMPOS is a resident of Newark, Delaware who used the Products, including but not limited to DevaCurl Ultra Defining Gel, and Arc AnGEL from approximately 2017 until approximately January 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, in particular the representations on the DevaCurl website claiming positive things about the Products, such as curl definition, control of frizz, and other healthy options that she was looking for. Ms. Campos also relied on DevaCurl social media posts as well as influencers whom Ms. Campos is informed and believes informed and believes were acting as an ambassador or agent on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

92.     Plaintiff LAURA CHAVEZ MORENO is a resident of Los Angeles, California, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Conditioner original hair conditioner, DevaCurl

Light Defining Gel, DevaCurl Low Poo Delight Cleanser, DevaCurl One Condition Delight hair cleanser, DevaCurl Styling Cream, Heaven In Hair and Divine Deep Conditioner from approximately 2015 until approximately December 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly relying on the recommendations of stylists whom she is informed and believes were acting as an ambassador on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

93.    Plaintiff SUSAN CHEYNE is a resident of Fort Worth, Texas who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, and DevaCurl One Condition® Original hair conditioner, from approximately 2014 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the recommendations of from her stylist who she believes worked at the ZeeBa Salon in Fort Worth, Texas, and whom Ms. Cheyne is

informed and believes was at all times relevant acting as on behalf of DevaCurl as an agent, ambassador, DevaCurl trained stylist, or otherwise as an agent of DevaCurl.    On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, hair thinning, change in curl pattern, and bald spots, resulting in an unwanted change in appearance.

94.    Plaintiff MOLLY CLARK is a resident of Guilford, Connecticut, who used the Products, including  but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Wavemaker, Melt Into Moisture Mask, Styling Cream, from approximately 2015 until approximately April 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase.  In particular, Ms. Clark relied on the information, recommendations and representations of the stylists at the Devachan Salon at both the Prince Street and Broome Street locations in New York, NY, and whom Ms. Clark is informed and believes were acting as ambassadors on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of

DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots and change in curl pattern, resulting in embarrassment, loss of self-esteem and an unwanted change in appearance.

95.    Plaintiff CHLOE CORNELL is a resident of Anchorage, Alaska, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl Light Defining Gel, Melt Into Moisture Mask, Styling Cream and Super Stretch Coconut Curl Elongator from approximately 2019 until approximately February 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the DevaCurl website where she utilized the curl quiz to find the right Products for her use; the information on the DevaCurl website led Ms. Cornell to believe that the Products were trustworthy, and that dermatologists were involved in the development of the Products, which information was intended to and did make her feel safe in using the Products. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, and an unwanted change in appearance.

96.     Plaintiff KIMBERLY COUTURE is a resident of Pittsfield, Massachusetts, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, Melt Into Moisture Mask, Styling Cream and Arc AnGEL from approximately 2017 until approximately February 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including relying on the representations on the DevaCurl website which portrayed amazing results, promised to better the health of the user's hair, and claimed that the Products exceeded the quality of other hair products.  In addition, she relied on the DevaCurl advertising and social media, including Facebook and YouTube; with particular attention to the representations that the Products would be able to turn unhealthy hair into healthy, more manageable hair and turn unhealthy curls into healthy curls.  Ms. Couture also relied on stylists and influencers, particularly watching several videos from salons around the US where influencers or customers in general would video their experience going to the salons to get the DevaCurl cut and Products.   Many influencers shared their DevaCurl experiences, including Farrah Dreamz on YouTube as well as Ayesha Malek, Penny Tovar, Stephanie Mero, all of whom touted the Products and influenced Ms. Couture to purchase and use them and all of whom Ms. Couture believes to have been trained, certified, paid, supported or otherwise promoted by DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near

them.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, hopeless feeling, and an unwanted change in appearance.

97.    Plaintiff DEAN DAMON is a resident of Clinton, Mississippi, who used the Products, including but not limited to DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, Deva-Curl Low-Poo Original hair cleanser, and DevaCurl No-Poo Decadence hair cleanser, from approximately 2014 until approximately May 2020.  He relied on the marketing and advertising of the Products by DevaCurl in making his decisions to purchase, including but not limited to the representations on the DevaCurl website that the Products were sulfate and paraben free, and that they were designed specifically for people with curly hair to minimize frizz and keep the curls tight and together  Based on said representations, Mr. Damon was led to believe that the shampoo and conditioner Products were about as safe and healthy for curly hair as one could get, and based on that he began purchasing and using the Products to keep his curly hair as healthy as possible..  He used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in hairline, change in curl pattern, and scalp irritation, resulting in embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

98.    Plaintiff ESTHER EPSTEIN is a resident of Baltimore, Maryland who used the Products, including but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Melt Into Moisture Mask, and Arc AnGEL from approximately 2015 until approximately early 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by

DevaCurl in making her decisions to purchase.  Ms. Epstein viewed the DevaCurl website with regard to the products.  The DevaCurl products were recommended to Ms. Epstein by a curly hair specialist at About Faces Salon in Towson Maryland.  The entire product line was also strongly recommended by a DevaCurl specialist named Tony Sartori at a salon in Maryland who specifically recommended certain products saying that they would improve the curl, cut down the frizz, were gentle, would not strip the hair, and would not cause dryness or frizz.  Said stylist now works at Salon O in Baltimore, which sells and recommends DevaCurl products.  Salon O prominently advertises the DevaCurl brand on its website.   Ms. Epstein is informed and believes that each of said salons and/or stylists was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, poor hair condition, hair thinning, bald spots, scalp irritation, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self- esteem, relationship issues, and an unwanted change in appearance.

99.     Plaintiff MARIANA GOES is a resident of Miami, Florida, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl

Ultra Defining Gel, DevaCurl Volumizing Cream, Heaven in Hair, Build Up Buster, and Arc AnGEL from approximately 2017 until approximately April 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase.  She used the Products and as a result thereof experienced hair loss, poor hair condition, hair thinning, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self- esteem, and an unwanted change in appearance.

100.    Plaintiff KIM GRAHAM is a resident of Malden, Massachusetts who used the Products including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser, and Arc AnGEL from approximately 2013 until approximately February 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, initially relying on the recommendations of a stylist at a salon in Cambridge, MA, whom Ms. Graham is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  In addition, Ms. Graham relied on the representations on the DevaCurl website as to the qualities of the Products.  She used the Products and as a result thereof experienced hair

loss, poor hair condition, hair thinning, balding, scalp irritation, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

101.    Plaintiff ROSEANNA GREGA is a resident of Mamaroneck, New York who used the Products including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, and Mist-er Right from approximately 2015 until approximately May 2020.    Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase.    She used the Products and as a result thereof experienced hair thinning, hair loss, and change in curl pattern, resulting in embarrassment.

102.    Plaintiff WENDY GREGORY is a resident of Belmont,  North Carolina who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition Decadence hair conditioner, DevaCurl Light Defining Gel, DevaCurl Leave-In Decadence hair conditioner, High Shine Oil, Mist-er Right, Set It Free, Styling Cream, Heaven In Hair, B'Leave In,  Wash Day Wonder ,and  Melt Into Moisture Mask, from approximately 2019 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the recommendations made by her stylist who used only DevaCurl products and whom Ms. Gregory is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express

purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

103.    Plaintiff DIANA HASROUNI is a resident of Cleveland, Ohio who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Wavemaker, Melt Into Moisture Mask, Styling Cream from approximately 2015 until approximately February 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including speaking to the DevaCurl stylist on the DevaCurl website, taking quizzes on the website to determine which Products to use, and consulting the website whenever making decisions as to new Products to us. In addition, Ms. Hasrouni relied on a Deva Curl certified stylist Sandy Marino and relied on magazine advertisements and social media campaigns that showed a diversity of people obtaining successful and healthy-looking results from the Products. Ms. Hasrouni is informed and believes that each of said stylists and/or influencers was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as

participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, and change in curl pattern, resulting in loss of self-esteem, and an unwanted change in appearance.

104.    Plaintiff DONNA HUGHES is a resident of Arnold, Missouri, who used the Products, including, but not limited to, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Wavemaker, and Styling Cream from approximately 2019 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, as a stylist she relied on the marketing and advertising of the Products by DevaCurl to professionals in making her decisions to purchase; as a stylist she received information from DevaCurl as to the Products.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem and an unwanted change in appearance.

105.    Plaintiff GIANNA IMBRONONE is a resident of Traverse City, Michigan, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl No-Poo Decadence hair cleanser, Wavemaker, Melt Into Moisture Mask, Styling Cream, Super Stretch Coconut Curl Elongator, Arc AnGEL,

46

Set It Free, and Beautiful Mess from approximately 2014 until approximately January 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including but not limited to visiting the DevaCurl website, taking a quiz about hair type to schedule a Deva cut, relying on the claims that DevaCurl offered healthy, natural products that would bring out the curls, as well as relying on the DevaCurl social media including the Instagram page and r/curlyhair.  In addition, Ms. Imbronone relied on a stylist named Courtney Diaz in Royal Oak, MI whom Ms. Imbronone is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern and bald spots, resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, loss of confidence, and an unwanted change in appearance.

106.  Plaintiff NATALIE KIKKENBORG is a resident of New Haven, Connecticut who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, Deva-Curl Low-Poo Original hair cleanser, Arc AnGEL and Frizz Free Volumizing Foam from approximately 2009-2010 until approximately March 2019.  Before and/or concurrent

with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the DevaCurl website which represented that the No-Poo would make her curls the healthiest by not drying them out. In addition, Ms. Kikkenborg relied on a stylist at the Jo Bruno Salon, a DevaCurl specialist in New Haven, CT, whom Ms. Kikkenborg is informed and believes informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

107.    Plaintiff RHONDA KOEHLER is a resident of North Providence, Rhode Island, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, Deva-Curl Low-Poo Original hair cleanser, DevaCurl No-Poo Decadence hair cleanser, Wavemaker, Melt Into Moisture Mask, Arc AnGEL, Build Up Buster and Mist-er Right initially from 2009, then stopping and restarting in 2019, until approximately January 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, in particular the robust advertisements

which promised the highest quality product for people with curly hair, as well as the DevaCurl website which reinforced the promise of healthy, full and thick hair provided by Products that were safe, gentle, and beneficial.  Ms. Koehler also relied on influencers such as Penny Trove, Ayesha Malek, and others, as well as representatives in retailers Ulta, Sephora and other salons.  Wholesalers such as CosmoProf also echoed the statement that DevaCurl was the safest and highest standard for curly hair.  Ms. Koehler informed and believes that each of the foregoing was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, scalp irritation, loss of hair density, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, self-consciousness, and an unwanted change in appearance.

108.    Plaintiff KRISTINA LANE is a resident of South Glens Falls, New York who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl Ultra Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, Styling Cream and Super Stretch Coconut Curl Elongator from approximately 2017 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the promoting of the Products by her stylist whom Ms. Lane is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by

DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, bald spots, change in curl pattern and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, depression, relationship issues and an unwanted change in appearance.

109.    Plaintiff JEANNE LASHMETT is a resident of Clayton, Missouri who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Decadence hair conditioner, Deva-Curl Low-Poo Original hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, and Styling Cream from approximately 2019 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations and Product descriptions on the DevaCurl website which represented that the Products would promote moisture in her hair. In addition, Ms. Lashmett was introduced to the Products at a DevaCurl "curly girl" salon which promoted the DevaCurl system and provided a book for her to read while waiting to get her hair cut.  The DevaCurl salon is or was named Frontenac Salon in St. Louis, and Ms. Lashmett is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on

information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, thinning, poor hair condition, thinning, hair frizzing, and change in curl pattern, resulting in emotional distress, embarrassment, feeling distraught, and an unwanted change in appearance.

110.    Plaintiff JULIA LEHNEN is a resident of Menomonee Falls, Wisconsin, who used the Products, including, but not limited to, DevaCurl Leave-In Decadence hair conditioner, from approximately 2019 until approximately May 2020.   Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, specifically the recommendation of a stylist named Kristen at the Center Attention Salon in Portage, IN, who advised Ms. Lehnen that she represented and promoted the DevaCurl brand, and whom Ms. Lehnen is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

111.    Plaintiff VICKIE LEWIS is a resident of Washington Courthouse, Ohio, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, Melt Into Moisture Mask, Styling Cream, B'Leave In , Arc AnGEL, Flexible Hold Hairspray and Frizz Free Volumizing Foam from approximately 2014 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, specifically the information and representations made on the DevaCurl website as to which Products to use, how to use the Products, and the representations on the website that the Products were good for hair, healthy, and would make her curls wonderful.  She also relied on the representations, information and advice received from stylists, in particular the Rebecca Spence Styling Salon in Tampa, FL, which is a DevaCurl location, and the Evan Joseph Salon in Columbus, OH, each of whom Ms. Lewis is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair thinning, bald spots, frizzing, and scalp irritation, resulting in emotional distress.

112.    Plaintiff JENNIFER LONGBINE is a resident of Austin, Texas, Oregon who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, and DevaCurl One Condition® Original hair conditioner, from approximately 2019 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the recommendations of her stylists, in particular Tammy Hathaway Perkins in Portland, OR, whom Ms. Longbine is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, hair thinning, poor hair condition, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, and an unwanted change in appearance.

113.    Plaintiff FELICIA MONTANO is a resident of Houston, Texas who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Delight hair conditioner, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Melt Into Moisture Mask, Styling Cream and DevaCurl Ultra Defining Gel from approximately 2017 until approximately April 2020.  Before and/or concurrent with the purchase of the

Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including but not limited to the representations on the DevaCurl website that the Products were for wavy, curly and coily hair and that the Products would hydrate and enhance the appearance of her hair.  Ms. Montano also relied on the representations made on DevaCurl social media and by influencers, and whom Ms. Montano is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  She used the Products and as a result thereof experienced hair loss, hair breakage, hair thinning, bald spots, and scalp irritation, resulting in emotional distress, loss of self-esteem, and an unwanted change in appearance.

114.    Plaintiff MARIA GUADALUPE MORA is a resident of Newark, Delaware, who used the Products, including, but not limited to, DevaCurl Ultra Defining Gel, Deva-Curl Low-Poo Original hair cleanser, Styling Cream and Arc AnGEL from approximately 2016 until approximately January 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, in particular the representations on the DevaCurl website claiming positive things about the Products, such as curl definition, control of frizz, and other healthy options that she was looking for.  Ms. Mora also relied on DevaCurl social media posts as well as influencers whom Ms. Mora is informed and believes informed and believes were acting as an ambassador or agent on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

115.    Plaintiff NICOLE MUSCARELLA is a resident of Milton, Pennsylvania, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Decadence hair conditioner, DevaCurl

Ultra Defining Gel, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Super Stretch Coconut Oil Elongator, Melt Into Moisture Mask, Styling Cream, Arc AnGEL and Mist-er Right, from approximately 2018 until approximately January 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the DevaCurl website, advertising that was often sent by email and on social media, her hair stylist, advertising at Ulta, and influencers including but not limited to Bianca Renee Today and others, and each of whom Ms. Muscarella is informed and believes was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, poor hair condition, hair thinning, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

116.    Plaintiff GIGI OLIVER is a resident of Racine, Wisconsin, who used the Products, including, but not limited to, DevaCurl One Condition® Original hair conditioner, DevaCurl Ultra Defining Gel, Deva-Curl Low-Poo Original hair cleanser, Arc AnGEL, and Heaven and Hair, from approximately 2019 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing

and advertising of the Products by DevaCurl in making her decisions to purchase, including the recommendation of her stylist Erica at Phenix Salon in Milwaukee, WI, and whom Ms. Oliver is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair breakage, poor hair condition, hair thinning and scalp irritation, resulting in low self-esteem and an unwanted change in appearance.

117.    Plaintiff ELIANA PALMA is a resident of Indio, California who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, Deva-Curl Low-Poo Original hair cleanser, Styling Cream, Super Stretch Coconut Curl Elongator, and Arc AnGEL, from approximately 2016 until approximately February 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including but not limited to the representations on the DevaCurl website, the photographs advertising healthy curly hair on the DevaCurl website and in salons as well as influencers whom Ms. Palma is informed and believes acted as ambassadors on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. Ms. Palma also relied on

professionals at CosmoProf who recommended the Products and whom Ms. Palma is informed and believes acted as ambassadors on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, hair dryness and brittleness, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues, and an unwanted change in appearance.

118.    Plaintiff KRISTEN PEDLEY is a resident of Anaheim, California, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, Melt Into Moisture Mask, Set It Free Finishing Spray, Build Up Buster, Deep Sea Repair Strengthening Mask, and Hi Shine Oil,  from approximately 2018 until approximately April, 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the recommendations of the Products by the stylists at Curls on Top in Laguna Beach, CA, and each of whom Ms. Pedley is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and

Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, poor hair condition, change in curl pattern and hair thinning, resulting in embarrassment and an unwanted change in appearance.

119.    Plaintiff MICHELLE PHARES is a resident of Santa Clarita, California who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Wavemaker, Melt Into Moisture Mask, Styling Cream, and Super Stretch Coconut Curl Elongator,  from approximately 2018 until early 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the DevaCurl website and blog where she was provided with hair and Product tips, as well as the DevaCurl social media paid advertising.  In addition, Ms. Phares relied on the advice and representations provided to her at Curls One on One Salon in Beverly Hills, CA, a DevaCurl certified salon with DevaCurl certified stylists, and each of whom Ms. Phares is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   On information and belief, both this salon and Plaintiff's stylist made these statements on

DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in her appearance.

120.    Plaintiff CHRISTINA PIERRE is a resident of Chesapeake, Virginia, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Melt Into Moisture Mask, Arc AnGEL, Heaven and Hair, B'Leave In, Pre Poo Wash Day Wonder, No Comb Detangling Cream, and Deep Sea Recovery Mask, from approximately 2018 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including representations on the DevaCurl website and DevaCurl advertising.  In addition, Ms. Pierre relied on the Products that were highly recommended by Certified DevaCurl stylists at Muse Salon in Chesapeake, VA, and Verzus Salon in Virginia Beach, VA, and each of whom Ms. Pierre is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and

Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, and an unwanted change in appearance.

121.    Plaintiff LAUREN RACUSIN is a resident of Pacific Grove, California, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, DevaCurl No-Poo Decadence hair cleanser, Wavemaker, Melt Into Moisture Mask, Styling Cream, Arc AnGEL, Believe-In, and Super Cream, from approximately 2018 until approximately early 2000's. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly relying on the DevaChan salon and stylists in New York City, whom Ms. Racusin is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these

businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, poor hair condition, hair thinning, change in curl pattern and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

122.   Plaintiff SARAH RASHID is a resident of Peoria, Illinois who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Melt Into Moisture Mask, Super Stretch, Super Cream, B'Leave In and Volumizing Frizz-Free Foam, from approximately 2018 until approximately March 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including but not limited to the information on the website as to the best Products for each type of curl, and the DevaCurl social media account(s) and social media posts by DevaCurl showing women with bouncy, healthy nice curls, and each of whom Ms. Rashid is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and scalp irritation, resulting in emotional distress, embarrassment, and loss of self-esteem.

123.   Plaintiff EMMANUEL REGISTER is a resident of Bayonne, New Jersey, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One

Condition® Decadence hair conditioner, and DevaCurl Light Defining Gel from approximately 2015 until approximately June 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations on the DevaCurl website. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self- esteem, and an unwanted change in appearance.

124.    Plaintiff MARITZA RIVERA is a resident of Union City, Georgia, who used the Products, including, but not limited to, DevaCurl Ultra Defining Gel, Wavemaker, Melt Into Moisture Mask, Super Stretch Coconut Curl Elongator, and High Shine, from approximately 2017 until approximately early 2020. She relied on marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including but not limited to various hair bloggers and influencers each of whom Ms. Rivera is informed and believes was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

125.    Plaintiff CARMEN ROSA is a resident of Bronx, New York**,** who used the Products, including, but not limited to, DevaCurl Light Defining Gel, and Melt Into Moisture Mask, from approximately 2016 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations on the DevaCurl website as to the healthy nature and safety of the Products. Ms. Rosa also particularly relied on the advertising and marketing of the Light Defining

Gel as she was looking for a lightweight option.  She used the Products and as a result thereof experienced hair loss, hair thinning and change in curl pattern, resulting in embarrassment and an unwanted change in appearance.

126.    Plaintiff GINA RYAN is a resident of Virginia Beach, Virginia, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Melt Into Moisture Mask,  B'Leave In , Wavemaker, Build Up Buster, Super Cream, Mirror Curls, and the Curl  Maker, from approximately 2017 until approximately December 2019.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations on the DevaCurl website as to the healthy nature of the Products, and which Products to use for which types of curls.  She also followed the DevaCurl Instagram account, as well as the advertisements on the website which promised beautiful, healthy curls.  Ms. Ryan also relied on influencers on Instagram and YouTube, including but not limited to Ayesha Malik, Merian Missmo and Felicia (last name unknown, Instagram name is @hif3licia), each of whom Ms. Ryan is informed and believes informed and believes were acting as an ambassador or agent on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and change in curl pattern, resulting in emotional distress, embarrassment, and a loss of self-esteem.

127.    Plaintiff ANNYOCELI SANTIAGO is a resident of Rochester, Minnesota, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl Ultra Defining Gel, and Melt Into Moisture Mask from approximately 2019 until

approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

128.    Plaintiff KAALAN SCHAEFFER is a resident of Phoenix, Arizona, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Delight hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl Leave-In Decadence hair conditioner, Styling Cream, B'Leave In , Arc AnGEL, Build Up Buster, Set It Free, Super Cream and High Shine, from approximately 2017 until approximately February 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including relying on the representations on the DevaCurl website.  Ms. Schaeffer also followed and relied on the DevaCurl Instagram as well as following curly influencers whom Ms. Schaeffer is informed and believes informed and believes were acting as an ambassador or agent on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   Furthermore, Ms. Schaeffer relied on representations from stylists at Curl Power in Minneapolis, MN and Honeycomb Salon in Minneapolis, MN, as they used all DevaCurl Products and encouraged her to buy and use exclusively DevaCurl Products. Ms. Schaeffer is informed and believes informed and believes that the aforementioned salons and stylists were acting as an ambassador or agent on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   On information and belief, both this salon and Plaintiff's stylist made these statements on

DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.   She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and scalp irritation, resulting in emotional distress, embarrassment, and loss of self-esteem.

129.   Plaintiff JULIANA STANSFIELD is a resident of Pflugerville, Texas, who used the Products, including, but not limited to DevaCurl One Condition® Decadence hair conditioner, DevaCurl Set It Free Moisture Lock, and Styling Cream, from approximately 2016 until approximately June 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, and loss of self-esteem.

130.   Plaintiff CANDACE STIMSON is a resident of Chattanooga, Tennessee, who used the Products, including, but not limited to, DevaCurl Low-Poo Delight Weightless Waves, Arc AnGEL, and Frizz Free Volumizer Foam from approximately 2019 until approximately May 2020.   Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the Product descriptions and reviews on the DevaCurl website, which advertised that the Products would enhance curly hair and minimize frizz.  She used the Products and as a result thereof experienced hair loss, poor

hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

131.    Plaintiff MARYAM TEHRANIE is a resident of Atlanta, Georgia, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Light Defining Gel, DevaCurl No-Poo Decadence hair cleanser, DevaCurl Leave-In Decadence hair conditioner, B'Leave In, Wash Day Wonder, Build Up  Buster, and SuperCream from approximately 2016 until approximately February 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly DevaCurl's Instagram and website which featured photos, videos, brand ambassadors and testimonials that promoted healthy, sleek and maintainable hair, and each of whom Ms. Tehranie is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  Ms. Tehranie also relied on the DevaCurl social media as well as the DevaCurl book.  In addition, Cally Radunezel, a certified DevaCurl stylist at Callys Curls, which is a DevaChan salon, made Product and cut recommendations to Ms. Tehranie upon which she relied; Ms. Tehranie is informed and believes said stylist and salon were each was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.   On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or

stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, social issues and an unwanted change in appearance.

132.    Plaintiff SUZANNE TILLOTSON is a resident of Charleston, South Carolina, used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Decadence hair conditioner, Deva-Curl Low-Poo Original hair cleanser, DevaCurl No-Poo Decadence hair cleanser, Styling Cream, Spray Gel, Curl Boosting Spray Gel and All About Curls, from approximately 2015 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern, and bald spots, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in appearance.

133.    Plaintiff MEGAN TRAMA is a resident of San Pedro, California, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Decadence hair conditioner, Super Stretch Coconut Curl Elongator, B'Leave In, and Build Up Buster, from approximately 2019 until approximately March 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase. Ms. Trama first found out about the Products and DevaCurl stylists from the DevaCurl website. She relief on the facts that they represented that the Products were not harsh and specifically designed for curly hair. Ms. Trama also relied on the DevaCurl Instagram page. In addition, she relied on the DevaCurl certified stylist who

advised that in order to maintain her haircut she would need to purchase the full line of Products which were represented to be the best thing for the health of her hair. The stylist was named Laura Lawson at the Mane Hair Studio in Rolling Hills Estates, CA, both of whom Ms. Trama is informed and believes said stylist and salon were acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl. On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, change in curl pattern, and scalp irritation, resulting in embarrassment, loss of self-esteem, and an unwanted change in appearance.

134. Plaintiff JEANETTE TRAVIS is a resident of Buffalo Grove, Illinois, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, Deva-Curl Low-Poo Original hair cleanser, and DevaCurl Low-Poo Delight hair cleanser, from approximately 2018 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including the representations on the DevaCurl website that the Products would enhance curly hair with safe ingredients to make the hair full of moisture and healthy. In addition, Ms. Travis relied on the advice and promotion given to her by the Strand Hair Studio in Libertyville, IL, which is a DevaCurl salon that provides Deva cuts. The owner of said salon is or was

named Cheryl.  Ms. Travis is informed and believes that each was acting as an ambassador on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

135.  Plaintiff STELLA WARDA is a resident of Macomb, Michigan, who used the Products, including, but not limited to, DevaCurl One Condition® Decadence hair conditioner, and Ultra Moisturizing from approximately early 2020 until approximately May 2020.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, and an unwanted change in appearance.

136.  Plaintiff SHIRLEY WEISS is a resident of Jackson Heights, New York, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Decadence hair conditioner, DevaCurl

Ultra Defining Gel, Deva-Curl Low-Poo Original hair cleanser, DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser, Melt Into Moisture Mask, Arc AnGEL, Heaven and Mousse, from approximately 2017 until approximately 2017.  Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, particularly the representations on the DevaCurl website as well as the DevaCurl social media and Instagram and YouTube postings by DevaCurl and influencers, whom Ms. Weiss is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl pattern, and scalp irritation, resulting in emotional distress.

137.  Plaintiff JENNIFER WHITCOMB is a resident of Frankfurt, Indiana, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, B'Leave In  Curl Boost, Set It Free, Styling Cream, Frizz-Free Volumizing Foam, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl One Condition Delight hair conditioner, No Poo Quick Cleanser, Build Up Buster, DevaCurl Light Defining Gel, DevaCurl Low-Poo Delight hair cleanser, DevaCurl Low-Poo Original, Flexible Hold Hair Spray, and Heaven In Hair, from approximately 2015 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including information provided by her stylist Melody, and whom Ms. Whitcomb is informed and believes was acting as an ambassador or agent on behalf of DevaCurl and was endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  On information and belief, both this salon and Plaintiff's stylist made these statements on DevaCurl's behalf as participants in its Pro, Ambassador or similar promotional program, which offered training

70

and promotional materials for hair care businesses and professionals for the express purpose that these businesses and professionals would use and promote the Products based on the training provided by DevaCurl for that purpose and otherwise subject to DevaCurl's control. Further on information and belief, DevaCurl listed the salon and/or stylist on its website and through the website helped customers find this salon and/or stylist by offering a geographic search for customers to find a salon or Deva trained stylist near them. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted change in her appearance.

138. Plaintiff JILLIE WILLIAMS is a resident of Valrico, Florida, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra Defining Gel, DevaCurl Light Defining Gel, DevaCurl No-Poo Decadence hair cleanser, Melt Into Moisture Mask, Styling Cream, and Super Cream Coconut Curl Styler from approximately 2019 until approximately October 2019. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, social and relationship issues, and an unwanted change in appearance.

139. Plaintiff AMANDA WILSON is a resident of Provo, Utah, who used the Products, including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser, DevaCurl One Condition® Original hair conditioner, and Styling Cream, from approximately 2019 until approximately May 2020. Before and/or concurrent with the purchase of the Products, she relied on the marketing and advertising of the Products by DevaCurl in making her decisions to purchase, including but not limited to the

representations on the DevaCurl website, as well as influencers whom Ms. Williams is informed and believes acted as ambassadors on behalf of DevaCurl and were endorsed, trained, paid, authorized or otherwise acting on behalf of DevaCurl.  Said influencers include, but are not limited to, @ingecurls, @janelleoshaughnessy and @nataliehilljensen. She used the Products and as a result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and bald spots, resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and an unwanted change in appearance.

### FIRST CAUSE OF ACTION FOR NEGLIGENCE
### AND/OR GROSS NEGLIGENCE

140.    Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove as if fully set out herein at length.

141.    At all times herein relevant, DevaCurl owed a duty to Plaintiffs to warn them that usage of the Products posed an unreasonable risk and danger of injury and hair damage. DevaCurl further owed a duty to Plaintiffs not to expose them to a product known to cause bodily harm.  DevaCurl further owed a duty to Plaintiffs to provide complete and accurate labeling, warnings in marketing, advertising and packaging the Products.  DevaCurl further owed Plaintiffs a duty of care to use due care in the development, design, testing, manufacturing, marketing, and sale of the Products offered for use by consumers.

142.    DevaCurl negligently and carelessly manufactured, designed, tested, researched, marketed and distributed the Products, and failed to adequately test and warn Plaintiffs of the inherent and unreasonable risks and dangers of the Products.

143.    DevaCurl knew, or in the exercise of reasonable diligence should have known, that the Products were dangerous or were likely to be dangerous when used as directed or misused in a reasonably foreseeable manner.

144.    DevaCurl knew, or in the exercise of reasonable diligence should have known, that Plaintiffs and other consumers would not recognize the dangers inherent in the

Products and would rely on the representations and warranties of DevaCurl as to the safety and functionality of the Products.

145. Based on the facts as alleged herein, DevaCurl breached each and every duty owed to the Plaintiffs.

146. A reasonable manufacturer, distributor or seller of a product under the same or similar circumstances would have adequately tested the Products, warned of the danger inherent in the Products, recalled the Products when faced with thousands of complaints of injuries, and taken all reasonable steps to protect consumers, including Plaintiffs, from injuries..

147. As a direct and proximate result of the aforesaid negligence of Defendants, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, severe injuries and damages and severe emotional distress in an amount of which exceeds the jurisdictional limit of all lower courts which would otherwise have jurisdiction.

## <u>SECOND CAUSE OF ACTION FOR STRICT LIABILITY/DESIGN DEFECT</u>

148. Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove as if fully set out herein at length.

149. DevaCurl is the producer, manufacturer, marketer, designer, distributor and/or seller of the Products.

150. The Products are defectively manufactured, formulated and/or designed, and are inherently and unreasonably dangerous, because they fail to perform as safely as an ordinary consumer would expect, and because the unreasonable risk of injury inherent in the Products and the ingredients thereof outweighs any benefits conferred by the Products. The unreasonably dangerous and defective condition of the Products renders them not reasonably fit, suitable or safe for their intended purpose.

151. The Products are also defective due to inadequate and unsafe warnings/instructions, testing, study and/or reporting regarding the results of such efforts.

Similarly, Defendant's post-market warnings/instructions are inadequate and unsafe because, after Defendant knew or should have known of the risk of injury from the Products, Defendant failed to immediately provide adequate warnings/instructions to Plaintiffs and the public.

152.    DevaCurl introduced the Products into the stream of commerce in the United States, despite the fact that DevaCurl knew or should have known that the Products were in an unreasonably dangerous and defective condition as described above.  This conduct evinces a callous and conscious disregard for public safety by Defendants.

153.    The risks associated with the Products far outweigh any potential benefit to be obtained from the usage of the Products.  The substantial gravity of the harm experienced by Plaintiffs is not outweighed by any possible utility of these beauty products.

154.    As a direct and proximate result of the unreasonably dangerous and defective condition of the Products, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, severe injuries and damages and severe emotional distress in an amount of which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

155.    The failure of the Products to perform safely was a substantial factor in causing the injuries and damages to Plaintiffs.

156.    DevaCurl is strictly liable to Plaintiffs for said damages as well as exemplary damages for DevaCurl's malicious conduct in knowingly placing the dangerous Products into the stream of commerce.

## THIRD CAUSE OF ACTION FOR STRICT PRODUCT LIABILITY: FAILURE TO WARN

157.    Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove as if fully set out herein at length.

158.    The Products had potential risks and side effects that were known or should have been known to DevaCurl in light of the general knowledge in the scientific

community at the time of design, formulation, manufacture, distribution and sale of the Products.

159.    The potential risks and side effects presented a substantial danger when the Products are used in a reasonably foreseeable manner.

160.    Plaintiffs, as ordinary consumers, would not have and did not recognize the potential risks and side effects of the Products.

161.    DevaCurl owed a duty to Plaintiffs to warn that the Products presented substantial risks and side effects.

162.    DevaCurl failed to adequately warn Plaintiffs of the unreasonable risks and dangers associated with using the Products.

163.    The lack of sufficient instructions and warnings was a substantial factor in causing the injuries and damages to Plaintiffs.  The Products are also defective due to inadequate and unsafe warnings/instructions, testing, study and/or reporting regarding the results of such efforts. Similarly, DevaCurl's post-market warnings/instructions are inadequate and unsafe because, after DevaCurl knew or should have known of the risk of injury from the Products, DevaCurl failed to immediately provide adequate warnings/instructions to Plaintiffs and the public.

164.    DevaCurl breached each and every one of the duties owed to Plaintiffs.

165.    As a direct and proximate result of DevaCurl's failure to warn, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, serious personal injury and severe emotional distress in an amount of which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

166.    DevaCurl is strictly liable to Plaintiffs for the injuries and damages alleged herein.

## FOURTH CAUSE OF ACTION FOR NEGLIGENT PRODUCT LIABILITY

167.    Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove as if fully set out herein at length.

168.    DevaCurl owed a duty to Plaintiffs to properly formulate, manufacture, design, research, inspect and distribute the Products, and adequately warn consumers of the inherent and unreasonable risks and dangers of the Products.

169.    DevaCurl also owed a duty to Plaintiffs to exercise ordinary care in the formulation, marketing, design, selling, distributing, testing, packaging, and labeling of the Products.

170.    DevaCurl was aware, or should have been aware, that the Products were not safe for use by consumers (including Plaintiffs).

171.    DevaCurl knew, or in the exercise of ordinary and reasonable care should have known, that if the Products were not properly formulated, manufactured, designed, assembled, compounded, tested, inspected, packaged, labeled, fabricated, constructed, analyzed, distributed, serviced, merchandised, advertised, promoted, marketed and sold for the use and purpose for which they were intended, they were likely to injure the person or persons by whom they were used.

172.    DevaCurl formulated, manufactured, sold, designed, assembled, compounded, developed, maintained, tested or failed to test, inspected or failed to inspect, packaged, labeled, fabricated, constructed, analyzed, distributed, serviced, merchandised, advertised, promoted, marketed, instructed or failed to instruct regarding, warned or failed to warn consumers (including Plaintiffs) of the foregoing risks and dangers of using the Products as directed, which Products were intended by Defendant to be used by the general public for the purpose of cleansing, conditioning, protecting and otherwise treating curly hair.

173.    DevaCurl knew or should have known by the use of scientific knowledge available at the time of manufacture, sale and/or distribution of the Product, and further by

76

the negative results that had been reported to DevaCurl by consumers following use of the Products, that the Products were unsafe for the intended and foreseeable use because of the aforementioned defects in its design, manufacture, testing, installation, components and constituents, so that it could not safely serve its purpose.

174.    DevaCurl exposed the users of the Products, including but not limited to Plaintiffs, to the risk of serious injury, despite the foregoing.

175.    DevaCurl knew or reasonably should have known that the ordinary and foreseeable users of the Products, including but not limited to Plaintiffs, would not recognize all of the potential risks and dangers of the Product, including, but not limited to, the risk inherent in being exposed to formaldehyde and other harsh and dangerous chemicals contained within the Product, and the risks that the Products would damage or destroy their hair and scalps.

176.    Plaintiffs used the aforementioned Products for the purpose for which they were intended, and in a manner that was reasonably foreseeable by Defendants.

177.    Upon information and belief, at the time Plaintiffs used the Products, they were substantially the same as when they left DevaCurl's possession for distribution.

178.    DevaCurl breached each and every one of the duties owed to Plaintiffs.

179.    As a result of the defective and dangerous conditions of the Products, and a result of DevaCurl's failure to adequately warn Plaintiffs regarding the dangers and use, the Products caused serious and severe injuries and damages to Plaintiffs.

180.    As a result of the above-described defective conditions, and as a result of the failure to adequately warn, train and/or instruct by DevaCurl, Plaintiffs were hurt and injured in their health, strength, and activity, all of which injuries have caused and will continue to cause them great mental, physical, and nervous pain and suffering. As a result of such injuries, Plaintiffs have suffered general damages in an amount to be proven at the time of the trial of this action.

181.    As a further result of the above-described defective conditions, and as a result

of the failure of DevaCurl to adequately warn, train and/or instruct, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, serious personal injury and severe emotional distress in an amount of which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**FIFTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY**

182.    Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove as if fully set out herein at length.

183.    The Products were sold by DevaCurl with the implied warranty of merchantability because DevaCurl is a merchant under the meaning employed by statute and the common law. At all times relevant hereto, there was a duty imposed by law on DevaCurl which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that product be acceptable in trade for the product description.

184.    DevaCurl represented and warranted that the Products were of merchantable quality.

185.    DevaCurl sold the Products to Plaintiffs with the implied warranties that the Products would pass without objection in the trade, were fit for the ordinary purpose for which they were sold and used, were adequately contained, packaged, and labeled, and conformed to the promises or affirmations of fact made on the packaging, labeling and marketing of the Products.

186.    The Products did not meet the foregoing criteria, as they were not fit for the ordinary purposes for which this type of beauty products are used, and was not of the same quality as those generally accepted in the trade.  The defects in the Product existed prior to the delivery of the Products to Plaintiffs.

187.    Notwithstanding the aforementioned duty, at the time of delivery, the Products sold to Plaintiffs were not merchantable because they contain defect(s) that cause hair loss and other injuries upon proper application and do not otherwise perform as

represented.

188.    In addition, Plaintiff purchased some or all of the Products that injured them relying on the same false and misleading statements made by third parties, such as retailers, acting as agents of DevaCurl and/or as part of a close relationship with DevaCurl whereby DevaCurl provided the false and misleading information to the third party for the express purpose that the third party disseminate the information to promote the Products. Therefore, Plaintiffs are in contractual privity with DevaCurl to the extent that privity might be required under applicable law.

189.    Plaintiffs have incurred damages as described herein as a direct and proximate result of their use of the defective Product and DevaCurl's breach of the above-referenced warranties.  Specifically, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, serious injuries and damages and severe emotional distress in an amount of which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

190.    Plaintiffs are entitled to bring the claims set forth herein as they paid for the Products at issue; in addition, DevaCurl has had reasonable notice of the tens of thousands of consumers, including Plaintiffs, who sustained injuries as a result of their reasonable and justified reliance on the express and implied warranties as set forth herein.  As such no notice is required.

## SIXTH CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

191.    Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove as if fully set out herein at length.

192.    Plaintiffs formed a contract with DevaCurl at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact made by DevaCurl through marketing and advertising as part of its overall campaign and strategy as detailed herein. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs

and DevaCurl. To the extent Plaintiffs purchased the Products through a third party, privity exits as alleged hereinabove.

193.    By way of its website, magazine advertising, salons, influencer and brand ambassador programs, DevaCurl Academy, DevaCurl certified and other DevaCurl-exclusive and trained stylists, endorsements, transformation photos and videos, testimonials, retail suppliers and other direct marketing channels, as detailed hereinabove, DevaCurl's promotion of the Products to Plaintiffs includes multiple false and/or misleading express promises, as alleged hereinabove and including but not limited to:

    a.  The Products are "safe;"

    b.  The Products are gentle, and do not strip hair of natural oils or weigh hair down as opposed to shampoos;

    c.  The Products contain only "good" ingredients and are "100% free of sulfate, silicone, paraben, Phthalate, mineral oil and gluten," which creates the false impression that the Products do not contain formaldehyde, a known allergen with carcinogenic effects, or other harmful or harsh ingredients;

    d.  The Products should be used to exclusion of traditional shampoos and other brands of hair care products;

    e.  The Products clean and condition hair and scalp;

    f.  The Products are "rooted in science" "extensively tested," "validate[d] . . . for quality, safety and performance," "perfected" and "introduced to the market only after . . . undergoing strict safety testing protocols;"

194.    For the reasons previously detailed at length, each statement is false and/or misleading. The Products are not safe, gentle, free of harsh chemicals, a better alternative to traditional shampoos or extensively tested in a scientifically valid manner. To the contrary, the Products contain, among other harsh ingredients, sulfates, silicones and formaldehyde or formaldehyde releasers, which soon become formaldehyde once the

product is opened. These ingredients are known to cause ACD and trigger other immune reactions do to their status as allergens or sensitizers, to which a large and growing proportion of the population are allergic. As the same time, DevaCurl's no poo products—what it sells as a safer alternative to shampoo—contain inadequate cleansing ingredients and cannot remove the non-water soluble ingredients found in the Products, dirt, dust, dead skin and other debris commonly found on the scalp and hair. This leads to the buildup and SD. ACD, build up and SD, in turn, cause hair loss and other personal injuries, such as itching, blisters and sores, redness, rashes, yeast and bacterial infections of the scalp, among other things. Over time, these conditions cause permanent damage to the scalp and hair follicles and, thus, to the hair.

195.    Despite its representations to the contrary, DevaCurl did not test these Products extensively or in a scientifically valid manner prior to selling them. In some cases, the Products were not tested pre-market at all, other than possibly at one of DevaCurl's salons. The other testing on which DevaCurl relies on making those representations, HRIPT testing, failed to meet scientific standards in terms of the concentration of product used on test subjects.

196.    All conditions precedent to DevaCurl's liability under this contract were performed by Plaintiffs when they purchased and used the Products.

197.    DevaCurl breached express warranties about the Products and their qualities because their statements about the Products were false and the Products do not conform to their affirmations and promises. Plaintiffs would not have purchased the Products had they known the true nature of the Products and the misstatements regarding what the Products are, what they contain and how they would work.

198.    New York law does not require privity for express warranty causes of action involving personal injury. Nonetheless, Plaintiffs purchased some or all of the Products that injured them from DevaCurl or a party with whom DevaCurl is in privity, such as a retailer as alleged herein. Therefore, Plaintiffs are in contractual privity with DevaCurl.

199.    Plaintiffs are entitled to bring the claims set forth herein as they paid for the Products at issue; in addition, DevaCurl has had reasonable notice of the tens of thousands of consumers, including Plaintiffs, who sustained injuries as a result of their reasonable and justified reliance on the express and implied warranties as set forth herein.  As such no notice is required.

200.    Plaintiffs have incurred damages as described herein as a direct and proximate result of their use of the defective Product and DevaCurl's breach of the above-referenced warranties.  Specifically, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, serious injuries and damages  and severe emotional distress in an amount of which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**SEVENTH CAUSE OF ACTION—CONSUMER PROTECTION CLAIMS**

201.    Plaintiffs repeat, reiterate and reallege each and every allegation herein as if fully set out herein at length.

202.    Plaintiffs assert consumer protection claims under the laws of their respective home states. Those statutes are as follows:

| PLAINTIFF | STATE | APPLICABLE STATUTE(S) |
|---|---|---|
| A Bates | CA | California False Advertising Law ("CFAL"), Bus. & Prof. Code § 17500 *et seq*.; California Unfair Competition Law ("CUCL")), Cal. Bus. & Prof. Code § 17200 *et seq.* |
| E. Abdagic | IA | Private Right of Action for Consumer |

82

| | | |
|---|---|---|
| | | Frauds Act I.C.A, §714H.1 et seq.; 714.16 *et seq.* |
| G. Aguilera | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 et seq. |
| Y. Ali | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq* |
| A Aracena | NJ | New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq.* |
| R. Arlan | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code § 17.50 *et seq.* |
| L. Asuncion | WA | Washington Unfair Business Practices-Consumer Protection Act ("CPA") ; 19 WA ST Ch. 19.86, *et seq.* |
| L. Atlas | NJ | New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 *et seq.* |
| T. Bates | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| H. Begun | NY | N.Y. Gen. Bus. Law § 349 |
| G. Benedict | OH | Ohio Deceptive Trade Practices Act, |

| | | |
|---|---|---|
| | | Ohio Rev. Code Ann. § 4165.01 *et seq* |
| S. Booth | AZ | Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.* |
| E. Bruss | MN | Minnesota Consumer Protection Act, ; Minnesota Deceptive Trade Practices Act, Minn. Stat. Ann. §325D.43 *et seq.* |
| L. Burke | MA | Mass. Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 2 |
| Y. Campos | DE | Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511 *et seq* |
| L. Chavez Moreno | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| S. Cheyne | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| M. Clark | CT | Connecticut Uniform Trade Practices Act, Conn. Gen. Stat. Ann.§ 42-1l0b(a) (West) |
| C. Cornell | AK | Alaska Unfair Trade Practices Act, A.S. § 45.50.471 |
| K. Couture | MA | Mass. Consumer Protection Act, Mass. |

| | | |
|---|---|---|
| | | Gen. Laws Ann. ch. 93A, § 2 |
| D. Damon | MS | Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et seq.* |
| E. Epstein | MD | Maryland Consumer Protection Act, Md. Code, Commercial Law § 13-301 *et seq.* |
| M. Goes | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| K. Graham | MA | Mass. Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 2 |
| R. Grega | NY | N.Y. Gen. Bus. Law § 349 |
| W. Gregory | NC | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–1.1 *et seq.* |
| D. Hasrouni | OH | Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 4165.01 *et seq* |
| D. Hughes | MO | Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq* |
| G. Imbronone | MI | Michigan Consumer Protection Act, Mich. Comp. Laws Ann.§ 445.903 |

| | | (West) |
|---|---|---|
| N. Kikkenborg | CT | Connecticut Uniform Trade Practices Act, Conn. Gen. Stat. Ann.§ 42-1l0b(a) (West) |
| R. Kohler | RI | Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws Ann.§ 6-13.1-2 |
| K. Lane | NY | N.Y. Gen. Bus. Law § 349 |
| J. Lashmett | MO | Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq* |
| J. Lehnen | WI | Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann.§ 100.18(1) |
| V. Lewis | OH | Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. § 4165.01 *et seq* |
| J. Longbine | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| F. Montano | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| M. Mora | DE | Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511 *et seq* |
| N. Muscarella | PA | Pennsylvania Unfair Trade Practices |

| | | |
|---|---|---|
| | | and Consumer Protection Law, 73 P.S. § 201-2 *et seq.* |
| G. Oliver | WI | Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann.§ 100.18(1) |
| E. Palma | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| K. Pedley | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| M. Phares | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq* |
| C. Pierre | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq* |
| L. Racusin | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| S. Rashid | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| E. Register | NJ | New Jersey Consumer Fraud Act, N.J. |

| | | |
|---|---|---|
| | | Stat. Ann. § 56:8-2 *et seq.* |
| M. Rivera | GA | Georgia Fair Business Practice Act, Code Ann. s 106-1201 et seq. |
| C. Rosa | NY | N.Y. Gen. Bus. Law § 349 |
| G. Ryan | VA | Virginia Consumer Protection Act, Va. Code § 59.1-198 *et seq* |
| A Santiago | MN | Minnesota Consumer Protection Act, ; **Minnesota Deceptive Trade Practices Act,** Minn. Stat. Ann. § 325D.43 *et seq.* |
| K. Schaeffer | AZ | Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq* |
| J. Stansfield | TX | Texas Deceptive Trade Secrets Act, Tex. Bus. & Com. Code  § 17.50 *et seq.* |
| C. Stimson | TN | Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* |
| M. Tehranie | GA | Georgia Fair Business Practice Act, Code Ann. s 106-1201 et seq. |
| S. Tillotson | SC | South Carolina Unfair Trade Practices Act, S.C.C.A. § 39-5-10 *et seq.* |

| | | |
|---|---|---|
| M. Trama | CA | CFAL, Bus. & Prof. Code § 17500 *et seq.*; CUCL, Cal. Bus. & Prof. Code § 17200 *et seq.* |
| J. Travis | IL | Ill. Consumer Fraud Act, 815 ILCS 505/2. |
| S. Warda | MI | Michigan Consumer Protection Act, Mich. Comp. Laws Ann.§ 445.903 (West) |
| S. Weiss | NY | N.Y. Gen. Bus. Law § 349 |
| J. Whitcomb | IN | Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 *et seq.* |
| J. Williams | FL | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* |
| A Wilson | UT | Utah Consumer Sales Practices Act, U.C.A. § 13–11–4(2) |

203.   A chart providing the elements of each state statute is attached hereto as **Exhibit "A"** and incorporated herein by reference.

204.   As detailed above, DevaCurl made false and misleading promises and misrepresentations to Plaintiffs in connection with the marketing campaign of the Products, through its website, advertising, salons, influencer and brand ambassador programs,

DevaCurl Academy, DevaCurl certified and other DevaCurl-exclusive and trained stylists, endorsements, transformation photos, testimonials, retail suppliers and other direct marketing channels

205.   DevaCurl also engaged in unconscionable commercial practices, deception and fraud when marketing the Products to Plaintiffs by, among other things, failing to disclose that it paid or otherwise incentivized influencers, brand ambassadors, hair models, celebrities, magazines other advertising media, stylists, salon owners and retailers to promote the Products using content controlled by DevaCurl in violation of FTC regulation and guidance. In doing so, DevaCurl affirmatively misrepresented that these third parties endorsed the Products without the influence of financial or other gain and, with regard to all but retailers, regularly used the Products as recommended by DevaCurl, that is to say, to the exclusion of other competitive products or, at the least, traditional shampoos. In addition, with regard to influencers, brand ambassadors and celebrities, DevaCurl affirmatively mispresented that these parties could achieve their hair styles without the use of professional hair stylists.  . Finally, DevaCurl also suggested celebrities regularly used the Products and/or endorsed or sponsored or were affiliated with the Products or DevaCurl when, in fact, none of those things were true.

206.   DevaCurl intentionally obscured the commercial nature of the representations made by these agents with the intent that consumers, including Plaintiffs, would perceive that advertising as favorable peer-to-peer testimonials arising strictly from customer satisfaction, not paid promotions. DevaCurl understood that this deception would and did have the effect of making the representations much more effective in selling the Products.

231.   The FTC is charged with protecting consumers from false and deceptive advertising. All or nearly all of the consumer protection laws under which Plaintiffs assert these claims are substantially modelled on the Federal Trade Commission Act and courts enforcing those statutes have in large measure relied on the Federal Trade Commission Act's definition of "deceptive practices" and the interpretation of that term by federal courts.

The Federal Trade Commission Act ("FTCA") requires prominent, clear and conspicuous disclosure "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement." *Id.* (citing 16 C.F.R. § 255.5). Defendant's failure to comply with the FTCA rendered its use of influencer, brand ambassador and similar endorsement-based advertisement misleading.

207.    Beyond its duty to communicate honestly with consumers about the quality and nature of the Products, once DevaCurl learned of defects in the Products, including the tendency to cause hair loss and other injuries despite proper use (or based upon foreseeable misuse), DevaCurl owed consumers, including Plaintiffs, a duty to disclose the risks of hair loss and other injuries because those risks would be a material fact in a consumer's decision-making process, and, without DevaCurl's disclosure, consumers would not know that such a risk exists, particularly given DevaCurl's representations that the Products are safe, gentle and subject to extensive testing.

232.    DevaCurl intended that Plaintiffs and other consumers would rely on—and Plaintiffs, in fact, reasonably and justifiably relied on—DevaCurl's misrepresentations as to the safety and efficacy of the Products. A reasonable consumer would have found the same representations false or misleading.

233.    The transactions by which Plaintiffs have been injured are important to consumers-at-large in that the transactions are intentional and part of the Campaign, a scheme to defraud consumers world-wide.

208.    The actions of DevaCurl as alleged herein are the producing and proximate cause of Plaintiffs' hair loss, scalp and other injuries.

234.    Defendant's consumer protection statute violations are incurable inasmuch as they are intentional and part of the Campaign, a scheme to defraud consumers. In any event, Plaintiffs notified DevaCurl of the consumer protection statute violations and DevaCurl failed to cure the violations.

235.    To the extent the Plaintiffs' home state consumer protection laws provide only for equitable relief, Plaintiffs plead in the alternative that, with regard to the injuries they have sustained as a result of DevaCurl's violation of consumer protection laws, they have inadequate legal remedies given DevaCurl's allegations that some or all Plaintiffs failed to give sufficient notice of their claims prior to filing suit or otherwise claim Plaintiffs are not entitled to legal damages and since, in some cases, the consumer protection laws of the Plaintiffs' home states do not provide for the recovery of reasonable attorneys' fees, litigation expenses and costs, an award of such fees, expenses and costs being necessary to make Plaintiffs whole and to cause DevaCurl to discontinue its violation of consumer protection statutes. In addition, Plaintiffs note that some of the conduct underlying their consumer protection claims are unique to these claims, such as DevaCurl's censorship of negative online reviews, failure to alert authorities of the many complaints of similar injuries, false celebrity endorsements, undisclosed affiliations with influencers, brand ambassadors, stylists and salon owners, all of which could have prevented Plaintiffs' injuries

209.    Plaintiffs are entitled to bring the claims set forth herein as they paid for the Products at issue; in addition, DevaCurl has had reasonable notice of the tens of thousands of consumers, including Plaintiffs, who sustained injuries as a result of their reasonable and justified reliance on the express and implied warranties as set forth herein.  As such no notice is required.

210.    Plaintiffs have incurred damages as described herein as a direct and proximate result of their use of the defective Product and DevaCurl's actions and breaches as alleged hereinabove.   Specifically, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, serious injuries and damages  and severe emotional distress in an amount of which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

211.    In addition, Plaintiffs are entitled to additional remedies as provided in 15

*U.S.C.* §2310(2)(d), including the aggregate amount of costs and expenses, including attorney's fees, expended in connection with the prosecution of this action.

## ATTORNEYS' FEES, EXPENSES AND COSTS

212.    Plaintiffs have been required to secure the assistance of counsel to protect their legal rights and mitigate their damages as a result of the wrongful conduct of DevaCurl.

213.    Having made proper presentment and provided actual and sufficient notice of their claims to DevaCurl, Plaintiffs seek recovery of their reasonable attorneys' fees, expenses and costs pursuant to all applicable statutes, regulations and agreements.

## PRAYER

WHEREFORE Plaintiffs, and each of them, pray for Judgment against DevaCurl as follows:

1. For an award of actual and consequential damages according to proof;

2. For an award of punitive damages according to proof;

3. For restitution in the form of disgorgement of DevaCurl's ill-gotten profits;

4. For an award of reasonable attorneys' fees, costs and expenses incurred herein;

5. For an award of pre- and post-judgment interest; and;

6. For all other relief to which they may be justly entitled.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury under *Federal Rules of Civil Procedure*.

Dated: April 27, 2023

           Respectfully submitted,


           **ESENSTEN LAW**
           **Robert L. Esensten**
           **Randi R. Geffner**


    By:   /s/ *Randi R. Geffner*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 27th day of April 2023, I served the foregoing document on all counsel of record via ECF.


By:   _/s/ *Randi R. Geffner*_____